******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# JEAN-PIERRE BOLAT *v.* YUMI S. BOLAT
## (AC 37788)

DiPentima, C. J., and Sheldon and Devlin, Js.

*Syllabus*

The plaintiff, whose marriage to the defendant previously had been dis-
solved, appealed to this court from the judgment of the trial court
denying his motion for child support and finding him in contempt for
failing to pay for certain extracurricular activity expenses. In September,
2013, the defendant had filed a motion seeking, inter alia, to modify the
custody orders, which the trial court denied. Attached to that motion,
the defendant included a financial affidavit reflecting gross and net
weekly incomes that were more than those amounts on the financial
affidavits submitted at the time of the dissolution. Thereafter, the plain-
tiff filed a motion for modification form to which he appended a motion
for child support. The plaintiff identified the decision of the trial court
denying the defendant's September, 2013 motion to modify the custody
orders and his loss of employment as substantial changes in circum-
stances warranting a modification of child support. In his attached
motion for child support, the plaintiff claimed that the defendant was
employed and listed her salary, and attached the parties' 2014 financial
affidavits. While the plaintiff's motion for modification was pending, the
defendant filed a motion seeking to hold the plaintiff in contempt for
failing to pay his share of certain expenses for extracurricular activities,
pursuant to the parties' separation agreement, which had been incorpo-
rated into the dissolution judgment. At a hearing on the parties' motions,
the trial court stated that it would consider only the grounds raised in
the plaintiff's motion for modification of child support form, namely,
the trial court's decision denying the defendant's September, 2013
motion and the plaintiff's claim as to loss of employment. In denying
the plaintiff's motion, the court found no substantial change in circum-
stances warranting an order of child support and further ordered the
plaintiff to pay the defendant $847.99 for his share of the extracurricular
activities. On appeal, the plaintiff claimed, inter alia, that the trial court
should have reviewed the exhibits that he had submitted with the motion
and the parties' current financial affidavits prior to concluding that no
substantial change in circumstances had occurred. *Held:*

1. The trial court abused its discretion in denying the plaintiff's motion for
modification of child support: in addition to the testimony of the parties,
the plaintiff attached a child support worksheet and the parties' 2014
financial affidavits, and both parties filed financial affidavits on the day
of the hearing on the motions, a comparison of the defendant's financial
affidavits from the time of the dissolution to the day of the hearing on
the motion to modify revealed a change in her net weekly income, and,
therefore, the increase in the defendant's income properly was before
the court and should have been considered by the court prior to ruling
on the plaintiff's motion; accordingly, because the court did not consider
the increase in the defendant's income from the date of the initial order
to the date of the modification hearing prior to determining that there
was no substantial change in circumstances, further proceedings on the
plaintiff's motion for modification were necessary.

2. The trial court abused its discretion in finding the defendant in wilful
contempt for failing to pay the extracurricular activity expenses for the
parties' minor children; although the order was sufficiently clear and
unambiguous to support a finding of contempt, the court erred in finding
that the defendant had wilfully disobeyed the order, as the parties'
separation agreement provided that they would share agreed upon
expenses for extracurricular activities, the defendant testified that the
plaintiff had not agreed to pay for certain expenses for sailing and
lacrosse, and admitted that the plaintiff never had failed to pay for an
agreed upon extracurricular expense, and, therefore, the defendant
failed to prove, by clear and convincing evidence, that the plaintiff had
failed to comply with a prior court order.

Argued January 8—officially released June 5, 2018

Action for the dissolution of a marriage, and for other relief, brought to the Superior Court in the judicial district of New Haven and tried to the court, *Abery-Wetstone, J.*; judgment dissolving the marriage and granting certain other relief; thereafter, the court, *Gould, J.*, denied the plaintiff's motion for child support and granted the defendant's motion for contempt, and the plaintiff appealed to this court. *Reversed; further proceedings.*

*Steven R. Dembo*, with whom, were *Caitlin E. Kozloski* and, on the brief, *P. Jo Anne Burgh*, for the appellant (plaintiff).

*Richard W. Callahan*, for the appellee (defendant).

*Opinion*

DiPENTIMA, C. J. The plaintiff, Jean-Pierre Bolat, appeals from certain postdissolution orders denying his motion for child support and finding him in contempt. On appeal, the plaintiff argues that the court erred in (1) denying his motion for child support and in finding no substantial change in the parties' financial circumstances since the date of judgment despite an increase in the income of the defendant, Yumi S. Bolat, and (2) finding him in contempt for failing to pay extracurricular activity expenses. We agree with the plaintiff as to both claims and, accordingly, reverse the judgment of the trial court.

The following facts are relevant to the resolution of the issues on appeal. The plaintiff and the defendant were married on September 21, 1998, in Harpswell, Maine. At the time the parties met and married, the plaintiff was an active duty officer in the Navy. The defendant is a Japanese national. The parties have three children: a son born in 1999, a son born in 2001, and a daughter born in 2003. The parties raised their children in Japan until the breakup of their marriage in 2010. Thereafter, the plaintiff moved to Connecticut with the children, where they have resided since that time. The defendant followed the family to Connecticut. She initially entered the United States on a visitor's visa but eventually was granted her green card.

In 2010, the plaintiff instituted this action for dissolution of marriage. On June 21, 2011, the court, *Abery-Wetstone, J.*, rendered a judgment of dissolution, which incorporated the parties' separation agreement and parenting plan-final custody stipulation (parenting plan). According to the parenting plan, the plaintiff would have sole legal and primary physical custody of the three minor children. Pursuant to the separation agreement, the parties agreed that, on the basis of the total coordination of family finances, and because the plaintiff was unemployed and receiving only retired military pay, there would be no order of child support. The separation agreement also provided that the parties would share agreed upon extracurricular expenses for the minor children and that each party would notify the other of any change in his or her employment status or income. Finally, the parties acknowledged that, due to a qualifying disability pursuant to General Statutes § 46b-84c, their elder son was entitled to receive child support until he attained the age of twenty-one years.

The parties filed financial affidavits at the time of the dissolution. The plaintiff's financial affidavit, filed June 21, 2011, reflected a gross weekly income of $830.46 and a net weekly income of $709.59. The defendant's affidavit, filed June 21, 2011, reflected a gross weekly income of $134 and a net weekly income of $181.[1]

On September 6, 2013, the defendant filed a motion

seeking, inter alia, to modify the custody orders. The defendant filed a financial affidavit, dated March 20, 2014, reflecting a total gross weekly income of $1150 and a total net weekly income of $901. On July 15, 2014, the court, *Munro, J.*, denied the defendant's motion.

On August 13, 2014, the plaintiff, as a self-represented party, filed a motion for modification form (JD-FM-174) in which he identified the "[r]ecent decision by Judge Munro and loss of employment" as substantial changes in circumstances warranting the modification of child support. While the plaintiff's motion for modification was pending, the defendant filed a motion seeking to hold the plaintiff in contempt for his failure to pay his share of extracurricular activities. Following a hearing on March 2, 2015, the court, *Gould, J.*, denied the plaintiff's motion for modification, finding that there was no substantial change in circumstances warranting an order of child support. The court also found the plaintiff in wilful contempt of a prior court order. Specifically, the court found that the plaintiff owed the defendant for approximately 50 percent of all extracurricular activities for the minor children in the amount of $847.99. The plaintiff then filed the present appeal.

I

The plaintiff first claims that the trial court erred in finding no substantial change of circumstances and denying the motion for child support where the evidence clearly established that the defendant's income had increased significantly. Specifically, the plaintiff argues that the court should have reviewed the exhibits submitted with the motion and the parties' then current financial affidavits prior to concluding that no substantial change in circumstances had occurred. We agree.

We first set forth our standard of review. "The standard of review in family matters is well settled. An appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based on the facts presented. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted). *O'Donnell* v. *Bozzuti*, 148 Conn. App. 80, 82–83, 84 A.3d 479 (2014). "Notwithstanding the great deference accorded the trial court in dissolution proceedings, a trial court's ruling . . . may be reversed if, in the exercise of its discretion, the trial court applies the wrong standard of law." (Internal quotation marks omitted.) *Tuckman* v. *Tuckman*, 308 Conn. 194, 200, 61 A.3d 449 (2013).

The following additional facts are necessary for the resolution of this issue. On August 13, 2014, the plaintiff filed a motion for modification form (JD-FM-174) identi-

fying the "[r]ecent decision by Judge Munro and loss of employment" as substantial changes in circumstances warranting the modification. On the motion for modification form, the plaintiff also directed the court to "[s]ee motion attached," which appears to be a "motion for child support" that was submitted along with the motion for modification form.[2] In the attached motion for child support, the plaintiff indicated that, in accordance with Judge Munro's July 15, 2014 memorandum of decision, he was requesting an order requiring the defendant to pay child support to the plaintiff in the amount of $1165.65 per month. The plaintiff indicated in the motion that he was unemployed and "receiving only his military retired pay (less 10 [percent] to the defendant), his VA disability payment, and temporary unemployment compensation (until February, 2015 at the latest)." The plaintiff further indicated that he had retained over $150,000 of family debt at the time of dissolution and that the defendant was employed at Maritime Program Group in Westbrook and was earning approximately $60,000 per year. The plaintiff attached a child support worksheet, the defendant's March 20, 2014 financial affidavit and the plaintiff's August 13, 2014 financial affidavit to the motion.

At the hearing on March 2, 2015, the court indicated that it would consider only the grounds raised in the plaintiff's motion for modification of child support form, namely, the "recent decision by Judge Munro and loss of employment." The court indicated that it would not "take any evidence regarding another judge's decision that in any way would affect a motion for [modification]." After inquiring whether the plaintiff was ready to proceed "with this motion regarding loss of employment," the plaintiff responded, "Yes, Your Honor, and other factors."[3] The court then allowed the plaintiff to testify in narrative form.

The plaintiff testified as follows: "[I]n July of 2014 I lost my employment. My previous employment was at the rate of $113,000 a year, give or take, a bonus of about $1000 or $3000 at the end of the year. At that time, I filed for child support. The defendant, according to her financial affidavits, is making $56,000 a year; has no debt. At the judgment of dissolution, I retained all of the family debt between $150,000 and $200,000." Later, following a series of objections by counsel for the defendant, the plaintiff testified that "[d]ue to the loss of that, the incurred debts; the changes in the children since the judgment. There are other reasons for the modification that are inherent reasons that previous— Judge Emons recognized . . . ." After the court sustained the defendant's objection, the plaintiff stated: "Well if—if you're only going to allow the testimony of myself regarding the loss of my employment, then, I believe, the facts are there in the case." On cross-examination, the plaintiff testified that he was unemployed at the time of the dissolution in 2011 and that, since that

time, he had obtained and lost employment at various times. He conceded that he was in the same financial circumstances at the date of the hearing that he was in at the time of the dissolution judgment. Following the hearing, the court found that there was no substantial change in circumstances to warrant an order of child support and, therefore, denied the motion for modification.[4]

Modification of child support is governed by General Statutes § 46b-86 (a), which provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of . . . support . . . may, at any time thereafter, be continued, set aside, altered or modified by the court upon a showing of a substantial change in the circumstances of either party . . . ."

"We previously have explained the specific method by which a trial court should proceed with a motion brought pursuant to § 46b-86 (a). When presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the . . . § 46b-82 criteria, make an order for modification. . . . The court has authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties. . . . Simply put, before the court may modify . . . [a child support order] pursuant to § 46b-86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties.

"The party seeking the modification has the burden of proving a substantial change in circumstances. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order. In making such an inquiry, the trial court's discretion is essential." (Citations omitted; emphasis omitted; internal quotation marks omitted.) *O'Donnell* v. *Bozzuti*, supra, 148 Conn. App. 87.

In the present case, in addition to the testimony of the parties, the plaintiff attached a child support worksheet, the defendant's March 20, 2014 financial affidavit and the plaintiff's August 13, 2014 financial affidavit to the motion to modify. In addition, the parties both filed financial affidavits on March 2, 2015, the date of the modification hearing. Finally, the defendant introduced into evidence the parties' 2011 financial affidavits filed at the time of dissolution. According to the defendant,

these documents demonstrate that the plaintiff had been able progressively to reduce his unsecured debt despite having expenses that exceeded his net income while the defendant had increased unsecured debt as her expenses continued to exceed her net income. A comparison of the defendant's financial affidavits from the time of the dissolution in 2011 to the 2015 hearing, however, reveals a change in her net weekly income from $181 to $767.[5] Notwithstanding the financial affidavits, however, the court did not allow the plaintiff to proceed on his claim regarding the change in the defendant's income. It permitted the plaintiff to proceed only with regard to his claim of loss of employment as stated on the motion for modification form. That form, however, directed the court to "see motion attached" which was the motion for child support listing additional factors regarding a change in circumstances. Specifically, the plaintiff claimed in the attached motion that the defendant was employed and earning approximately $60,000 per year. Under these circumstances, the increase in the defendant's income properly was before the court and should have been considered by the court prior to ruling on the plaintiff's motion.[6]

Because the court did not consider the increase in the defendant's income from the date of the initial order to the date of the modification hearing prior to determining that there was no substantial change in circumstances, we conclude that the court abused its discretion in denying the plaintiff's motion for modification of child support. We therefore remand this matter to the trial court to conduct further proceedings addressing the plaintiff's motion for modification of child support.

II

The plaintiff next claims that the court erred in holding him in contempt for failing to pay extracurricular activity expenses for the minor children. Specifically, the plaintiff argues that the language contained in section 4.3 of the parties' separation agreement was not clear and unambiguous and, therefore, cannot support a finding of contempt. The plaintiff further argues that, even if the order was sufficiently clear and unambiguous to support a finding of contempt, the court erred in finding that the plaintiff wilfully disobeyed such language. Although we conclude that the order was sufficiently clear and unambiguous to support a finding of contempt, we agree with the plaintiff that the court erred in finding that he had wilfully disobeyed the order.

"[O]ur analysis of a judgment of contempt consists of two levels of inquiry. First, we must resolve the threshold question of whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt. . . . This is a legal inquiry subject to de novo review.

. . . Second, if we conclude that the underlying court order was sufficiently clear and unambiguous, we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding.

"The abuse of discretion standard applies to a trial court's decision on a motion for contempt. . . . A finding of contempt is a question of fact, and our standard of review is to determine whether the court abused its discretion in [finding] that the actions or inactions of the [party] were in contempt of a court order. . . . To constitute contempt, a party's conduct must be wilful. . . . Noncompliance alone will not support a judgment of contempt. . . . We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Marshall* v. *Marshall*, 151 Conn. App. 638, 650, 97 A.3d 1 (2014). A finding of indirect civil contempt must be supported by clear and convincing evidence. *Brody* v. *Brody*, 315 Conn. 300, 318–19, 105 A.3d 887 (2015).

"[A] court may not find a person in contempt without considering the circumstances surrounding the violation to determine whether such violation was wilful. . . . [A] contempt finding is not automatic and depends on the facts and circumstances underlying it. . . . [I]t is well settled that the inability of [a] defendant to obey an order of the court, without fault on his part, is a good defense to the charge of contempt . . . . The contemnor must establish that he cannot comply, or was unable to do so. . . . It is [then] within the sound discretion of the court to deny a claim of contempt when there is an adequate factual basis to explain the failure." (Citation omitted; internal quotation marks omitted.) *Mekrut* v. *Suits*, 147 Conn. App. 794, 799–800, 84 A.3d 466 (2014).

Section 4.3 of the parties' separation agreement provides: "The parties shall share agreed upon extracurricular expenses for the minor children 50/50, said agreement not to be unreasonably withheld; except mother shall pay for the Japanese cultural camp, if any, as referred to and ordered in the Parenting Plan." On September 10, 2014, the defendant filed a motion seeking to hold the plaintiff in contempt for his failure to pay his share of the children's extracurricular expenses. At the hearing on the motion for contempt, the defendant submitted an itemized list of extracurricular activities, the year that the children attended each activity and the amount that the defendant paid for each activ-

ity. The activities listed on this document were sailing for one of the parties' sons and for their daughter, and lacrosse for their daughter. The defendant testified that the plaintiff was aware that the children were participating in the activities, but had not contributed toward the cost of those activities.

On cross-examination, however, the defendant testified that the plaintiff had not agreed to pay for their son's sailing in 2014 or their daughter's sailing or lacrosse in 2013. The defendant also testified that a "dear friend of [her] fiancé" had given her the money to pay for the sailing camps as a gift. The plaintiff asked the defendant if the plaintiff had ever failed to pay for any extracurricular activity that they had mutually agreed upon and the defendant responded that he had not. The plaintiff testified that he withheld his consent for the extracurricular activities because he could not afford to pay for them.

Following the hearing, the court found the plaintiff in wilful contempt of a prior court order and ordered the plaintiff to pay $847.99 for the extracurricular activities for the minor children. In its subsequent memorandum of decision, the court stated that "[t]he plaintiff testified at the subject hearing that he agreed to the activities, and did not pay his percentage share of the expenses related thereto." The court then found, "[b]ased on the aforementioned testimony," that the plaintiff was in wilful contempt of the prior court order, that he had knowledge of the court order, that the order was unambiguous and understandable by the plaintiff, and that, based on the sum of money in his bank account and his income at the time, the plaintiff had the ability to pay.

We first consider whether the order was sufficiently clear and unambiguous so as to support a judgment of contempt. Although the plaintiff contends that the plain language of section 4.3, which provides that "the parties shall share agreed upon extracurricular expenses for the minor children 50/50" clearly and unambiguously refers to agreed upon expenses, he argues that the order is nonetheless ambiguous because the trial court and the defendant construed it to mean that he was obligated to pay for agreed upon extracurricular activities. We disagree and conclude that the order clearly and unambiguously refers to agreed upon expenses. We further conclude, however, that the court abused its discretion in finding the plaintiff in wilful contempt of the order.

As stated previously in this opinion, the agreement provided that the parties would share "agreed upon extracurricular expenses for the minor children 50/50, said agreement not to be unreasonably withheld." On cross-examination, the defendant testified that the plaintiff had not agreed to pay for their son's sailing in 2014 or their daughter's sailing or lacrosse in 2013. She

also admitted that the plaintiff never had failed to pay an agreed upon extracurricular expense.[7] In light of the defendant's own testimony, the defendant failed to prove, by clear and convincing evidence, that the plaintiff had failed to comply with a prior court order. The court, therefore, abused its discretion in finding the plaintiff in in wilful contempt for failing to pay extracurricular activities for the minor children.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion.

In this opinion, the other judges concurred.

[1] The $134 in gross weekly income for the defendant was made up of $103 from her principal employment and $31 from other sources. It is unclear why the defendant's net income was higher than her gross income.

[2] There is no separate file stamp date on the attached "motion for child support."

[3] The transcript reveals the following:

"The Court: All right, I've got 253; I'm going backwards from there; it looks like I have a fairly large offering of financial affidavits that are attached to a motion. I have an undated motion for child support dated August 12.

"[The Plaintiff]: That would be the motion we're talking about.

"The Court: Is there a motion before—252, I have a motion for modification regarding support.

"[The Plaintiff]: Yes, Your Honor, that is what 252 is the child support.

"The Court: All right. The motion— the reason for the motion says, recent decision by Judge Munro and loss of employment. I'm not going to take any evidence regarding another judge's decision that in any way would affect a motion for [modification]. Are you planning to proceed with this motion regarding loss of employment?

"[The Plaintiff]: Yes, Your Honor, and other factors."

[4] In its subsequent memorandum of decision dated June 7, 2016, the court stated: "The plaintiff testified that, as of March 2, 2015, the date of the hearing of the instant motions, his employment and financial situation was the same as it was on . . . June 21, 2011, the date of the dissolution of his marriage. Based on the plaintiff's sworn testimony, the undersigned finds there is no substantial change in circumstances and therefore denies the plaintiff's motion, #252."

[5] The defendant's financial affidavit, filed on June 21, 2011, reflected a gross weekly income of $134 and a net weekly income of $181. The defendant argues, however, that her actual weekly gross income in 2011 was $550. According to the defendant, her 2011 financial affidavit was based on the "weekly average not less than 13 weeks" as required by the financial affidavit form. The defendant points to the child support guidelines filed in 2011, which reflects $550 per week gross income for the defendant. We note, however, that "[a] court is entitled to rely upon the truth and accuracy of sworn statements required by . . . the [rules of practice], and a misrepresentation of assets and income is a serious and intolerable dereliction on the part of the affiant which goes to the very heart of the judicial proceeding. . . . These sworn statements have great significance in domestic disputes in that they serve to facilitate the process and avoid the necessity of testimony in public by persons still married to each other regarding the circumstances of their formerly private existence." *Reville* v. *Reville*, 312 Conn. 428, 442–43, 93 A.3d 1076 (2014).

Furthermore, Article XVI of the parties' separation agreement provides, in relevant part: "The financial affidavit of the [plaintiff] and the financial affidavit of the [defendant] are hereby incorporated and made a part of this Agreement, it being expressly understood that the terms of this Agreement and the financial arrangement hereunder were made upon the representations contained in said affidavits. It is further understood and agreed that the parties hereto relied upon said representations in executing this Agreement."

[6] The court's only mention of the increase in the defendant's income was in its memorandum of decision dated June 7, 2016, filed after the plaintiff had filed several motions to complete and perfect the record. In that decision, the court stated that the plaintiff had "also alleged that, as a result of the marital dissolution agreement, he retained over $150,000 in family debt, and that the defendant was making $60,000 a year." In its decision the court

held, however, based on the plaintiff's testimony that his financial situation was the same on the date of the hearing on the motion to modify that it was on June 21, 2011, the date of the dissolution of the parties' marriage, that there was no substantial change in circumstances. The court did not address the increase in the defendant's income as stated in the plaintiff's motion to modify.

[7] The transcript reveals the following:

"[The Plaintiff]: Did I ever fail to pay for any extracurricular activity that we mutually agreed upon?

"[The Defendant]: No."

––––––––––––––––––––––––––––