******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# TOWN OF WETHERSFIELD ET AL.
## *v.* PR ARROW, LLC
## (AC 40407)

Keller, Elgo and Sullivan, Js.

*Syllabus*

The defendant appealed to the trial court from the decision by the plaintiff town upholding a cease and desist order that had been issued by the plaintiff zoning enforcement officer, L. The cease and desist order stated, inter alia, that the defendant was in violation of the applicable town zoning regulation (§ 5.2.H.5) that prohibited certain trucking or freight operations on its real property, which was located in a business park zone, without a special permit, as required by the zoning regulations. The defendant appealed from that order to the town's Zoning Board of Appeals but withdrew the appeal before the board could conduct a public hearing on the matter. When the activities at issue allegedly continued on the defendant's property, the plaintiffs commenced this action, alleging, inter alia, that the defendant had violated § 5.2.H.5 due to ongoing trucking or freight operations without a special permit. The plaintiffs also alleged that the defendant had violated the zoning regulations by permitting the parking and storage of commercial vehicles on the property that were not accessory to any use by a tenant at the property. The defendant thereafter filed an answer and six special defenses, one of which alleged that § 5.2.H.5 was void for vagueness. The trial court granted the plaintiffs' motion to preclude evidence concerning the defendant's special defenses that had been raised in the appeal to the board, which had been withdrawn. The court thereafter rendered judgment for the plaintiffs and ordered, inter alia, that the defendant obtain a special permit if it wanted to continue trucking and freight operations on its property. The court also retained jurisdiction as to the accessory use issue, and imposed fines and awarded costs and attorney's fees pursuant to statute (§ 8-12), and the defendant appealed to this court. The trial court thereafter granted the plaintiffs' postjudgment motion for contempt, finding that the violations on the defendant's property had continued after it rendered judgment, and the defendant filed an amended appeal. *Held*:

1. The defendant could not prevail on its claims that because the plaintiff did not plead an accessory use violation, the trial court lacked subject matter jurisdiction as to the issue of whether the parking and storage of commercial vehicles on its property constituted a valid accessory use, and that L lacked standing to bring an action on behalf of himself or the town: that court properly retained jurisdiction as to the accessory use issue, as that question fell within the authority conferred on the court by § 8-12, the plaintiffs raised that issue in their complaint and prayer for relief, and it was proper for the court, after the granting of a permanent injunction related to trucking operations conducted on the property without a special permit, to retain jurisdiction to the extent that there was a question on an accessory use with respect to commercial vehicles stored on the property; moreover, because the defendant failed to challenge the standing of the town to maintain this action pursuant to § 8-12 and the town was a party to the zoning enforcement action, there was no justiciable controversy as to the standing of L, and, therefore, the defendant's appeal as to the standing of L was dismissed as moot.

2. The trial court properly determined that the defendant failed to exhaust its administrative remedies as to its special defense that L exceeded his authority in issuing the cease and desist order:

   a. Although the defendant claimed that the zoning regulations vest exclusive authority in the town Planning and Zoning Commission to interpret words in the zoning regulations that are undefined, it was required first to raise its claim before the zoning board, which is empowered by statute (§ 8-6 [a] [1]) and the applicable town zoning regulation (§ 10.4.B.2) to decide appeals where it is alleged that there is an error in any order of a zoning enforcement officer and, thus, had the power to determine whether L exceeded his authority in issuing the order in the present case;

accordingly, the defendant was required to exhaust that administrative remedy before raising such a claim in the Superior Court, which it indisputably did not do.

b. The defendant's claim that an exception to the exhaustion requirement applied because an appeal to the board would have been futile was unavailing, as that claim was unsupported by the record and speculative: the board had the authority to determine whether there was any error in the cease and desist order, and to the extent that it did not rule in the defendant's favor, an avenue of judicial review was available to the defendant pursuant to statute (§ 8-8 [b]); furthermore, only one of the defendant's six special defenses raised a constitutional claim, which was that § 5.2.H.5 was void for vagueness and, thus, was excepted from the exhaustion requirement, and the trial court properly determined that the exhaustion requirement pertained to the remaining special defenses, which concerned the actions of L in issuing the order and did not fall within the narrow exception to the exhaustion requirement for constitutional claims.

3. The defendant could not prevail on its claim that § 5.2.H.5 of the zoning regulations was void for vagueness, which was based on its claim that the words "trucking or freight operations" were not defined in the regulations and that, without a definition, it could not ascertain whether the parking and storage of commercial vehicles on its property is prohibited: the term trucking operations pertained to all phases of the business of transporting goods on trucks, L testified that the storage of trucks was a significant facet of a trucking business, the title of § 5.2.H, which mentions storage uses, underscored the applicability of § 5.2.H.5 to the storage of commercial vehicles by trucking companies, and the defendant and its representatives were capable of utilizing their common sense when construing § 5.2.H.5, which dictated that the parking and storage of trucks was part and parcel of trucking operations; moreover, § 5.2.H.5 provided adequate notice to the defendant of the standards utilized to evaluate a special permit request for the parking and storage of commercial vehicles, as it was the only provision in the regulations that ostensibly encompassed the storage of commercial vehicles as a principal use and specifically permitted trucking operations as a conditional principal use in the business park zone, the defendant was charged with knowledge that the storage of commercial vehicles must be specifically permitted under the regulations, which are permissive in nature, and § 5.2.H.5 expressly required complete visual screening of equipment on the defendant's property, provides that owners of property in a business park zone must obtain a special permit for a conditional use from the commission before engaging in trucking operations on the property, and contained detailed criteria that governed special permit applications and the storage of commercial vehicles.

4. The defendant could not prevail on its claim that the trial court improperly interpreted the term trucking operations and substituted its interpretation for that of the commission; that court accorded trucking and freight operations its ordinary meaning, its construction was consistent with the apparent intent of the commission in enacting § 5.2.H.5, as the permissive nature of the regulations demonstrated that the commission intended to confine the principal uses of property in the business park zone to those specified in § 5.2 and the commission's classification of trucking operations as a conditional use that required a special permit indicated that it wanted to retain an additional degree of oversight and control over such activities, and the court was not bound by the interpretation of § 5.2.H.5 by the commission or zoning board, as the construction of the zoning regulation presented a question of law over which the court was obligated to exercise plenary review.

5. The trial court properly exercised its discretion in fashioning permanent injunctive relief in favor of the plaintiffs, as the court was presented with evidence that commercial vehicles were being stored by trucking companies on the defendant's property in contravention of the regulations, and the court, as the arbiter of credibility, was free to credit that evidence.

6. The defendant's claim that the trial court's injunction lacked sufficient clarity and definiteness was unavailing, the defendant having mischaracterized the wording of the court's decision; the plain terms of the court's order were sufficiently clear and definite, as they informed the defendant that it must obtain a special permit in accordance with the zoning regulations in order to conduct trucking or freight operations on its

property as a principal use.

7. The trial court did not abuse its discretion by imposing a daily fine against the defendant; although the defendant claimed that the imposition of a fine was improper because the plaintiffs had failed to prove that the storage of commercial vehicles on the defendant's property was a public nuisance, § 8-12 does not contain any such requirement, the defendant provided no authority mandating such proof and, to obtain relief under § 8-12, the plaintiffs needed to prove only that the regulations were violated, and it was within the court's discretion to impose the fine, as the circumstances required, from the date that the defendant withdrew its first appeal to the board to the date of the court's judgment.

8. The court did not abuse its discretion in awarding costs and attorney's fees to the plaintiffs pursuant to § 8-12, as the court set forth the applicable standard for wilfulness in the zoning violation context, found that the defendant willingly allowed a use of its property in contravention of the regulations after the cease and desist order had been issued, and noted that there was no evidence that weighed in the defendant's favor.

9. The defendant's claims that the trial court lacked subject matter jurisdiction over the plaintiffs' motion for contempt and that the motion was filed prematurely and granted improperly, were unavailing:

a. The trial court's jurisdiction over the contempt motion stemmed from its inherent authority to enforce its orders; the defendant provided no authority indicating that a court lacks subject matter jurisdiction over a postjudgment motion for indirect civil contempt unless a separate and distinct proceeding is commenced in the trial court, and although defense counsel, for the first time, moved to dismiss the plaintiff's motion for contempt at the hearing thereon due to allegedly insufficient service of process, the trial court concluded that the defendant waived that objection to the contempt motion when it did not file a timely motion to dismiss, and the defendant, by filing an objection to the motion and a memorandum of law, and then fully participating in the contempt hearing, submitted to the jurisdiction of the court.

b. The trial court properly granted the plaintiffs' motion for contempt; the plaintiffs were entitled to file their contempt motion at any time after the court issued its permanent injunction, the defendant having failed to provide any authority to the contrary or to request a discretionary stay of the trial court's order pursuant to the applicable rule of practice (§ 61-12), the evidence adduced at the contempt hearing substantiated the court's finding that the zoning violations that gave rise to this enforcement action still existed on the property, and although the defendant claimed that it operated under a good faith belief that certain efforts it had taken constituted compliance with the court's order, the trial court rejected the defendant's purported good faith understanding of its order, and in finding that the defendant's failure to comply with the order was not excused by its disingenuous attempts to avoid compliance and that a finding of contempt was therefore warranted, the court necessarily concluded that the defendant's violation of the court's order was wilful.

Argued October 15, 2018—officially released February 5, 2019

*Procedural History*

Appeal from the decision by the named plaintiff upholding an order issued to the defendant by the plaintiff zoning enforcement officer of the town of Wethersfield to cease and desist certain activities on certain of the defendant's real property, brought to the Superior Court in the judicial district of Hartford, where the matter was transferred to the Land Use Litigation Docket and tried to the court, *Berger, J.*; thereafter, the court granted in part the plaintiffs' motion to preclude certain evidence; judgment for the plaintiffs, from which the defendant appealed to this court; subsequently, the court, *Berger, J.*, denied the defendant's motion to dismiss and granted the plaintiffs' motion for contempt, and the defendant filed an amended appeal. *Appeal dismissed in part; affirmed.*

*Kevin J. Burns*, for the appellant (defendant).

*Thomas A. Plotkin*, with whom, on the brief, was *John W. Bradley, Jr.*, for the appellees (plaintiffs).

*Opinion*

ELGO, J. In this zoning enforcement action, the defendant, PR Arrow, LLC, appeals from the judgment of the trial court granting permanent injunctive relief in favor of the plaintiffs, the town of Wethersfield (town) and its zoning enforcement officer, Justin LaFountain.[1] On appeal, the defendant claims that (1) the court lacked subject matter jurisdiction in multiple respects, (2) the court improperly applied the doctrine of exhaustion of administrative remedies, (3) the zoning regulation in question is void for vagueness, (4) the court improperly interpreted that regulation, (5) the court improperly granted the permanent injunction, (6) the injunction lacked sufficient clarity and definiteness, (7) the court abused its discretion in imposing daily fines pursuant to General Statutes § 8-12, (8) the court abused its discretion in awarding costs and attorney's fees pursuant to § 8-12 without making a finding that it wilfully violated the zoning regulations and (9) the court improperly found the defendant in contempt. We dismiss as moot the defendant's jurisdictional challenge with respect to the standing of LaFountain. We affirm the judgment of the trial court in all other respects.

This appeal concerns activities conducted on real property known as 61 Arrow Road in Wethersfield (property) that at all relevant times was owned by the defendant. The property is located in the "Business Park (BP)" zoning district and is approved for office and industrial use. Principal and accessory uses permitted in the BP zone are specified in §§ 5.2 and 5.3, respectively, of the Wethersfield Zoning Regulations (regulations).

At all relevant times, LaFountain served as the town's zoning enforcement officer. In that capacity, he acted as the agent of the town's Planning and Zoning Commission (commission). See *Piquet* v. *Chester*, 306 Conn. 173, 176 n.1, 49 A.3d 977 (2012) ("[t]he zoning enforcement officer acts as the agent of the local planning and zoning commission"); Wethersfield Zoning Regs., art. X, § 10.3.A.1 ("[t]hese Regulations shall be enforced by the Zoning Enforcement Official as the Commission's duly authorized agent for enforcement of these Regulations"). By letter dated November 18, 2015, LaFountain issued a cease and desist order (order) to the defendant regarding certain activities on the property. That order stated in relevant part: "This letter is to inform you that [the property] is in violation of the [regulations]. Section 5.2.H.5 . . . states that 'trucking or freight operations with complete visual screening of equipment and materials' requires a Special Permit from the [commission]. Other commercial vehicles on the property must be accessory to uses within the offices and industrial bays. You are hereby ordered to *Cease and Desist* allowing trucking or freight operations to be permitted on the property. You may either appeal this order to the Zoning

Board of Appeals or comply within [fifteen] days of receipt. . . . If you wish to maintain the trucking or freight operations, a Special Permit would be required from the [commission]. Failure to comply with this order will leave this Department no alternative but to begin issuing [$100] Citations for every day the property is in violation. . . . In addition to any fines or penalties imposed therein, the applicable section(s) of the [regulations] may be enforced by injunctive procedure in the Superior Court."[2] (Emphasis in original.)

On December 2, 2015, the defendant filed an appeal of that order with the town's Zoning Board of Appeals (board). The "appeal application" form completed by the defendant asks applicants to "[p]lease describe your appeal (please include your documentation backing up your appeal)." In response to that query, the defendant attached a document that enumerated nine distinct grounds of appeal.[3] Before the board could hold a public hearing on the matter, the defendant formally withdrew its appeal of the order by letter dated January 22, 2016.

When activities allegedly continued on the property in contravention of the order, the plaintiffs commenced the present action pursuant to § 8-12.[4] The basis of that action was twofold in nature. First, the plaintiffs alleged that the defendant violated § 5.2.H.5 of the regulations due to "ongoing 'trucking or freight operations' at the [p]roperty without the required special permit . . . ."[5] Second, the plaintiffs alleged that the defendant violated the regulations by permitting the parking and storage of commercial vehicles on the property that "were not accessory to any use by a tenant."[6] With respect to those two grounds, the plaintiffs specifically alleged that "the current violations of the [r]egulations at the [p]roperty include: [a] an illegal trucking and freight operation; [b] the parking and storage of several commercial vehicles that are not associated with any business operating at this [p]roperty; [c] the frequent ingress and egress of tractor trailers, truck tractors, semitrailers, and/or other large commercial vehicles to-from the [p]roperty, including such vehicles that are not associated with any tenant; [d] the illegal parking of tractor trailers, truck tractors, semitrailers, and/or other large commercial vehicles at the [p]roperty for compensation." The plaintiffs further alleged that those violations constituted "a public nuisance due to the presence of and traffic created by tractor trailers, truck tractors, semitrailers, and/or other large commercial vehicles, and the emission or odors and noise." In their prayer for relief, the plaintiffs requested, inter alia, injunctive relief ordering the defendant to cease and desist from the aforementioned activities, a civil penalty of $2500, a civil fine to be imposed on a daily basis "until the violations are remedied," and an award of costs and attorney's fees pursuant to § 8-12.

On June 23, 2016, the defendant filed its answer, in

which it denied that any of the alleged violations had transpired on the property. The defendant also raised six special defenses,[7] which the plaintiffs denied in their entirety. Days later, the case was transferred by order of the court to the land use litigation docket in the judicial district of Hartford pursuant to General Statutes § 51-347b (a). On June 27, 2016, the plaintiffs filed a certificate of closed pleadings.

Prior to the filing of the defendant's answer, the plaintiffs had filed a motion in limine, in which they sought to preclude "all evidence, whether testimonial or documentary, pertaining to any issue which was included in the defendant's appeal of the [order], which appeal was filed with the [board] but withdrawn prior to an evidentiary hearing by that municipal board." In that motion, the plaintiffs argued that, "[h]aving failed to first proceed with an available administrative process provided . . . by statute, the defendant should not be permitted to present any such evidence or argument in this case." Relying principally on *Greenwich* v. *Kristoff*, 180 Conn. 575, 430 A.2d 1294 (1980), the plaintiffs claimed that "[s]ince the defendant chose to withdraw its [board] appeal of the [order] prior to that evidentiary hearing, this court should prohibit the defendant from now asserting [its] purported defenses in this zoning enforcement litigation." By order dated October 13, 2016, the court ruled that "[t]he issues in the motion [in limine] will be taken up at trial."

A two day court trial was held in January, 2017. At its outset, the court addressed the motion in limine. The court explained that it was granting the motion insofar as the defendant sought to present evidence on special defenses that had been raised in the defendant's appeal to the board. The court nonetheless advised the parties that it would consider such evidence to the extent that it was relevant to the balancing of the equities inherent in injunctive relief.

At trial, more than 100 exhibits were admitted into evidence, including dozens of photographs depicting what generically may be described as commercial trucks parked on the property.[8] In addition, two witnesses testified—LaFountain and John A. Tartaglia, the manager and 1 percent owner of the defendant. In his testimony, Tartaglia explained that the property was 5.5 acres in size and contained a 41,000 square foot building (building) "divided into twelve commercial bays and an office wing . . . ." He also testified that the property contained three parking lots located on the northerly, easterly, and southerly sides of the building. Tartaglia indicated that the northerly parking lot located to the rear of the building was only partially paved; the remainder was gravel. The majority of the photographs admitted into evidence depict commercial trucks parked on that rear lot.

In his testimony, LaFountain confirmed that the order

was issued in response to the presence of those trucks on the property. LaFountain testified that he had received multiple complaints about that issue, including a written complaint from a neighbor who resided at an abutting condominium complex.[9] Significantly, Tartaglia admitted in his testimony that "there were trucks parking on the property . . . that were not tenants of physical space in the building, but would park trucks in the back, licensed commercial vehicles. Commercial vehicles by definition would include any tractor-trailer or object that has a commercial plate in the state of Connecticut. I do not deny this." In its memorandum decision, the court found that Tartaglia had "devised [a] 'tag' system . . . to allow nonbuilding tenants to store trucks on [the] property."[10] (Citation omitted.) The court emphasized that the defendant's rent rolls, which also were admitted into evidence, documented various "enterprises storing trucks [on the property that were] not renting space within the buildings," including "a large number of Budget trucks" that are plainly visible in the photographs in evidence. At trial, Tartaglia admitted that only three of the thirteen tenants with parking privileges listed on the defendant's September, 2015 rent roll were renting office or industrial space in the building at that time.

The court also was presented with evidence, which it acknowledged in its memorandum of decision, that subsequent to the issuance of the order, Tartaglia sought to enter into lease agreements with tenants that were not renting space in the building. The deposition testimony of Melissa Ahmetovic was admitted as a full exhibit at trial. In that testimony, Ahmetovic confirmed that she operated a business with her husband known as M&A Express Transport, LLC, a "trucking company" that transported goods across the country. In 2015, M&A Express Transport, LLC, began renting space from the defendant to store its trucks on the property. Ahmetovic testified that, after LaFountain issued the order, Tartaglia contacted her and "said that he's going to make out a lease agreement stating that [Ahmetovic had] an office in there, there will be an office . . . on the last floor of the building . . . just in case the [plaintiff] comes after him, to state that [she did] have an office there, that [she does] work and everything, just in case if the town comes after him." Appended to that deposition as an exhibit was a document titled "Office Lease" that identified Ahmetovic and her husband as the tenant, and described the use as "General Office Use" for which "Overnight Parking" was permitted, commencing on December 1, 2015.[11] Ahmetovic testified that she never asked to rent office space on the property and thereafter never used an office on the property.[12] Although Tartaglia professed a lack of knowledge about the actual operations conducted on the property or the specific tenants that were storing trucks thereon, the court expressly found that testimony not credible in its memorandum

of decision. Tartaglia also admitted in his testimony that he had forbidden the town's zoning enforcement officers from entering the property.[13]

At trial, the parties offered contrasting interpretations of § 5.2.H.5 of the regulations. Tartaglia opined that the phrase "trucking or freight operations," as used in that regulation, did not apply to the mere parking and storage of commercial vehicles, but rather required an active trucking operation to be conducted on the property.[14] Tartaglia testified that his interpretation was predicated on his "years involved in the real estate business" and conceded that he did not examine any of the resources specified in § 2.2.B of the regulations.[15]

In his testimony, LaFountain stated that he had consulted those resources and also noted that § 2.3.C of the regulations contains a definition of the term "commercial vehicle," which includes "box trucks" and "tractor trailers."[16] After reviewing those resources, LaFountain concluded that "a trucking or a freight operation essentially is an activity where the main operation is the transportation of materials using trucks. If your business is using trucks to move materials or freight . . . it's a trucking or freight operation." LaFountain also emphasized that "the parking of trucks is . . . a very large facet of a trucking operation. . . . [W]hen you have a truck storage yard, for lack of a better term, it's where the primary piece of equipment that you use in a trucking operation is being stored." For that reason, he concluded that the parking and storage of commercial vehicles by entities engaged in the transportation of goods constituted "trucking or freight operations" on the property, for which a special permit was required pursuant to § 5.2.H.5 of the regulations. LaFountain further opined that the parking and storage of commercial trucks by tenants that were not engaged in a principal industrial or office use on the property could not be deemed an accessory use under the regulations.

In its April 20, 2017 memorandum of decision, the court found that the plaintiffs had "clearly proved by a preponderance of the evidence that the defendant is engaging in a trucking or freight operation without a special permit in violation of the town's zoning regulations. Notwithstanding Tartaglia's protestations and his allowed testimony on equitable considerations, there is no evidence that weighs in the defendant's favor." The court thus granted the plaintiffs' request for permanent injunctive relief and ordered: "[T]he defendant must comply with the town's regulations. If it seeks to conduct such trucking and freight operations on the property, it must first obtain a special permit to do so in accordance with the town's zoning regulations. Hence, all trucking operations not associated with a specific tenant business use on the property . . . or any trucking and freight operations being conducted without a special permit must immediately cease. Further, in

accordance with § 8-12, this court imposes a civil fine of $2500 for the violation of the cease and desist order as well as a civil fine of $50 per day from January 22, 2016, to the date of this order, together with costs and attorney's fees to be established at a hearing at a later date." In addition, the court noted that "[t]o the extent there is a question on an accessory use, this court will retain jurisdiction." From that judgment, the defendant appealed to this court on May 3, 2017.

The plaintiffs subsequently filed a motion for contempt with the trial court, alleging in relevant part that the defendant "continues to operate trucking or freight operations on the property, and continues to allow the parking or storage of trucks without a special permit in violation of the [regulations] and in violation of this court's order that [it] immediately cease the illegal activity." The defendant filed an objection to that motion, and the court held a hearing on July 6, 2017. By memorandum of decision dated August 18, 2017, the court granted the motion for contempt, finding that "the testimony and the evidence is clear that the subject violations still exist." The court then expressly "deferred the issue of monetary penalties" while the underlying matter was on appeal, but noted that "[t]he evidence from this proceeding will be included in that evaluation." The defendant thereafter filed an amended appeal with this court to encompass the trial court's ruling on the motion for contempt.

I

The defendant claims that the trial court lacked subject matter jurisdiction in two respects. It first alleges that "because [the] plaintiff[s] did not plead an accessory use violation, the court erred in making findings and retaining jurisdiction thereon." The defendant also argues that LaFountain lacked standing to sue on behalf of himself or the town. Those contentions are equally unavailing.

"Subject matter jurisdiction involves the authority of the court to adjudicate the type of controversy presented by the action before it. . . . [A] court lacks discretion to consider the merits of a case over which it is without jurisdiction . . . ." (Internal quotation marks omitted.) *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005). "Jurisdiction of the subject matter is the power [of the court] to hear and determine cases of the general class to which the proceedings in question belong. . . . A court has subject matter jurisdiction if it has the authority to adjudicate a particular type of legal controversy." (Internal quotation marks omitted.) *Metropolitan District* v. *Commission on Human Rights & Opportunities*, 180 Conn. App. 478, 485, 184 A.3d 287, cert. denied, 328 Conn. 937, 184 A.3d 267 (2018). "Any determination regarding the scope of a court's subject matter jurisdiction or its authority to act presents a question of law over which

our review is plenary." *Tarro* v. *Mastriani Realty, LLC*, 142 Conn. App. 419, 431, 69 A.3d 956, cert. denied, 309 Conn. 912, 69 A.3d 308, 309 (2013). In addition, when a decision as to whether a court has subject matter jurisdiction is required, "every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Novak* v. *Levin*, 287 Conn. 71, 79, 951 A.2d 514 (2008).

## A

The defendant's first claim requires little discussion. The plaintiffs brought this action pursuant to § 8-12, which "empowers [zoning enforcement] officers . . . to take overt action in order to compel compliance with the zoning laws." (Internal quotation marks omitted.) *Labulis* v. *Kopylec*, 128 Conn. App. 571, 578 n.11, 17 A.3d 1157 (2011). As this court has observed, "[t]he purpose of § 8-12 is to provide a means to enforce the zoning regulations and to prevent an unlawful use" of property. *Stamford* v. *Stephenson*, 78 Conn. App. 818, 826, 829 A.2d 26, cert. denied, 266 Conn. 915, 833 A.2d 466 (2003). Whether the parking and storage of commercial vehicles by trucking companies on the property constituted a valid accessory use is a question that plainly falls within the scope of authority conferred on the court by § 8-12. The court, therefore, did not lack subject matter jurisdiction over that issue.

While the court generally is not permitted to decide issues beyond those raised in the pleadings; see *Lynn* v. *Bosco*, 182 Conn. App. 200, 213, 189 A.3d 601 (2018); the plaintiffs in their complaint raised the issue of whether the activities in question constituted a valid accessory use.[17] Paragraph 6 of that pleading complains of "the existence of . . . commercial vehicles at the property, which were not accessory to any use by a tenant. . . ."[18] Paragraph 8 then alleges in relevant part that "[t]he current violations of the regulations at the property include . . . [b] the parking and storage of several commercial vehicles that are not associated with any business operating at this property; [c] the frequent ingress and egress of tractor trailers, truck tractors, semitrailers, and/or other large commercial vehicles to/from the property, including such vehicles that are not associated with any tenant . . . ."[19] Furthermore, in their prayer for relief, the plaintiffs requested, among other things, injunctive relief barring "the parking and storage of any commercial vehicle not associated with any business operating at this property . . . ." Accordingly, the question of whether the parking and storage of commercial vehicles on the property constituted a valid accessory use properly was at issue in this zoning enforcement action.

Although the defendant argues that the court improperly retained jurisdiction on that issue, it is well established that "a permanent injunction necessarily requires continuing jurisdiction . . . ." *Hall* v. *Dichello Distrib-*

*utors, Inc.*, 14 Conn. App. 184, 193, 540 A.2d 704 (1988); accord *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 242 n.11, 796 A.2d 1164 (2002) ("courts have inherent power to *change or modify* their own injunctions that is not limited by [General Statutes] § 52–212a" [emphasis in original]); *Conservation Commission* v. *Price*, 5 Conn. App. 70, 73, 496 A.2d 982 (1985) ("the court retained continuing jurisdiction through its original grant of a permanent injunction to the town"). For that reason, we conclude that the court, after granting a permanent injunction to enjoin "all trucking operations" that are "conducted without a special permit" and are "not associated with a specific tenant business use on the property," properly retained jurisdiction "[t]o the extent there is a question on an accessory use" with respect to commercial vehicles stored on the property.

B

The defendant also argues that LaFountain lacks standing in the present case. Because the defendant does not challenge the standing of the town to maintain this zoning enforcement action, that claim is moot.

In *DeRito* v. *Zoning Board of Appeals*, 18 Conn. App. 99, 100, 556 A.2d 632 (1989), the defendant property owners appealed to this court from the judgment of the trial court in favor of the plaintiffs, the town of Middlebury and its zoning enforcement officer. On appeal, the defendants challenged the standing of the zoning enforcement officer. This court declined to consider the merits of that contention, stating: "[T]he defendants do not challenge the standing of the plaintiff town of Middlebury . . . . Thus, even without [the zoning enforcement officer] as a party to the [action], the trial court had subject matter jurisdiction . . . by virtue of the presence of the plaintiff town of Middlebury." (Citations omitted.) Id., 103. As a result, this court concluded that "the standing of [the zoning enforcement officer] . . . presents no justiciable controversy on appeal" because "[n]o practical relief can be granted to the defendants on this claim, and it is not the province of appellate courts to decide questions disconnected from the granting of actual relief or from the determination of which no practical relief can follow." Id., 103–104. The court thus dismissed that part of the appeal. Id., 104.

That logic applies equally to the present case. Here, the town is a party to the zoning enforcement action brought against the defendant pursuant to § 8-12. As in *DeRito*, the defendant has not challenged the standing of that municipality. Accordingly, the standing of LaFountain presents no justiciable controversy in this appeal. See id., 103–104. The portion of the defendant's appeal challenging his standing, therefore, must be dismissed.

II

We next address the defendant's claim that the court improperly applied the doctrine of exhaustion of administrative remedies to its special defenses due to the defendant's withdrawal of its appeal to the board. The applicability of that doctrine implicates the subject matter jurisdiction of the Superior Court; *Piquet* v. *Chester*, supra, 306 Conn. 179; and thus presents a question of law over which our review is plenary. *Financial Consulting, LLC* v. *Commissioner of Ins.*, 315 Conn. 196, 208, 105 A.3d 210 (2015).

A

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law. . . . Under that doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum. . . . In the absence of exhaustion of that remedy, the action must be dismissed." (Internal quotation marks omitted.) *Republican Party of Connecticut* v. *Merrill*, 307 Conn. 470, 477, 55 A.3d 251 (2012); see also *Myers* v. *Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S. Ct. 459, 82 L. Ed. 638 (1938) ("no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted"). "The exhaustion doctrine reflects the legislative intent that such issues be handled in the first instance by local administrative officials in order to provide aggrieved persons with full and adequate administrative relief, and to give the reviewing court the benefit of the local board's judgment." (Internal quotation marks omitted.) *Simko* v. *Ervin*, 234 Conn. 498, 504, 661 A.2d 1018 (1995); see also *Owner-Operators Independent Drivers Assn. of America* v. *State*, 209 Conn. 679, 692, 553 A.2d 1104 (1989) (exhaustion doctrine "relieves courts of the burden of prematurely deciding questions that, entrusted to an agency, may receive a satisfactory administrative disposition and avoid the need for judicial review"). Our courts have long recognized that the doctrine applies to administrative proceedings of municipal land use agencies such as the board. See, e.g., *Piquet* v. *Chester*, supra, 306 Conn. 190–91; *Simko* v. *Ervin*, supra, 503; *Florentine* v. *Darien*, 142 Conn. 415, 431, 115 A.2d 328 (1955).

Under Connecticut law, municipal zoning boards of appeal are empowered "[t]o hear and decide appeals where it is alleged that there is an error in any order, requirement or decision made by the official charged with the enforcement of this chapter or any bylaw, ordinance or regulation adopted under the provisions of this chapter . . . ." General Statutes § 8-6 (a) (1); see also General Statutes § 8-7 ("[t]he concurring vote of four members of the zoning board of appeals shall be necessary to reverse any order, requirement or deci-

sion of the official charged with the enforcement of the zoning regulations"). That grant of power also is reflected in the local regulations at issue in the present case,[20] which authorize the board "[t]o hear and decide appeals where it is alleged that there is an error in an order or decision of the Zoning Enforcement Official in the enforcement of these Regulations." Wethersfield Zoning Regs., art. X, § 10.4.B.2. Those reciprocal state and municipal enactments represent a legislative determination "that an appeal [to the zoning board of appeals] is the proper mechanism for challenging the decision of a zoning enforcement officer." *Wnuk* v. *Zoning Board of Appeals*, 225 Conn. 691, 697 n.8, 626 A.2d 698 (1993).

Like the present case, *Piquet* v. *Chester*, supra, 306 Conn. 176, involved a cease and desist order issued by a municipal zoning enforcement officer. After reviewing the doctrine of exhaustion of administrative remedies, our Supreme Court held that "when a landowner receives notice from a zoning [enforcement] officer that the landowner's existing use of his or her property is in violation of applicable zoning ordinances or regulations, that interpretation constitutes a decision from which the landowner can appeal to the local zoning board of appeals . . . ." Id., 185; see also *Greenwich* v. *Kristoff*, supra, 180 Conn. 578 ("[c]learly the defendant had a statutory right to appeal the cease and desist order to the zoning board of appeals"); *Holt* v. *Zoning Board of Appeals*, 114 Conn. App. 13, 22, 968 A.2d 946 (2009) ("[a]ppeals [to the zoning board of appeals] are often taken from actions of zoning enforcement officers that involve . . . the issuance of cease and desist orders"). The court thus concluded that the plaintiff's failure to exhaust that administrative remedy prior to instituting a declaratory action "left the trial court without jurisdiction . . . ."[21] *Piquet* v. *Chester*, supra, 191.

In the present case, LaFountain issued a cease and desist order that apprised the defendant that, in his view, the existing use of the property violated the regulations. Inherent in that order was a determination that the defendant did not have a valid nonconforming use. See *Greenwich* v. *Kristoff*, supra, 180 Conn. 578. Pursuant to both §§ 8-6 (a) (1) and 8-7 of the General Statutes and § 10.4.B.2 of the regulations, the defendant was entitled to appeal those determinations to the board, which the defendant, in fact, did. See footnote 3 of this opinion. Had the defendant not withdrawn that appeal, the board could have determined whether LaFountain's interpretation of the applicable regulations was proper and whether the defendant had an existing nonconforming use. See *Piquet* v. *Chester*, supra, 306 Conn. 190; *Greenwich* v. *Kristoff*, supra, 578; *Lane* v. *Cashman*, 179 Conn. App. 394, 429, 180 A.3d 13 (2018); *Borden* v. *Planning & Zoning Commission*, 58 Conn. App. 399, 411, 755 A.2d 224, cert. denied, 254 Conn. 921, 759 A.2d 1023 (2000).

On appeal, the defendant attempts to draw a distinction between LaFountain's *interpretation* of the regulations and his *authority* to do so, claiming that § 2.2.B[22] vests exclusive authority in the commission to interpret words in the regulations that are undefined. Irrespective of the merits of that novel contention, it nonetheless remains that the defendant was free to raise that very argument in an appeal to the board. We reiterate that, by their plain language, General Statutes § 8-6 (a) (1) and § 10.4.B.2 of the regulations both empower the board to hear and decide appeals where it is alleged that there is an error in any order of a zoning enforcement officer. That broad grant conferred on the board the power to decide whether LaFountain exceeded his authority in issuing the order in the present case. The defendant thus was required to exhaust that administrative remedy before raising such a claim before the Superior Court, which it indisputably did not do.

B

The defendant further claims that two exceptions to the exhaustion requirement excuse its failure to obtain a ruling from the board on the propriety of the order. We address each in turn.

1

The defendant first invokes the futility exception to the exhaustion requirement, claiming that an appeal to the board in this case "would have been futile . . . ." As our Supreme Court has explained, the futility exception applies "*only* when [the administrative remedy] could not result in a favorable decision . . . ." (Emphasis added.) *O & G Industries, Inc.* v. *Planning & Zoning Commission*, 232 Conn. 419, 429, 655 A.2d 1121 (1995); see also *Concerned Citizens of Sterling* v. *Sterling*, 204 Conn. 551, 560, 529 A.2d 666 (1987) ("[F]utility is more than a mere allegation that the administrative agency might not grant the relief requested. In most instances, we have held that the failure to exhaust an administrative remedy is permissible only when the administrative remedy would be useless."). Our Supreme Court further has instructed that "an administrative remedy is adequate when it could provide the [party] with the relief that it seeks and provide a mechanism for judicial review of the administrative decision." *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 426.

The defendant's bald allegation that an appeal to the board would have been futile finds no support in the record before us and, thus, is "purely speculative." Id., 429. In the present case, the board had the authority, under both state law and municipal regulation, to determine whether there was any error in the order issued by LaFountain. Moreover, to the extent that the board did not rule in the defendant's favor, an avenue of judicial review was available pursuant to General Statutes

§ 8-8 (b).[23] The defendant's claim of futility, therefore, fails.

2

The defendant also claims that its constitutional claims are excepted from the exhaustion requirement. Our Supreme Court has recognized a "narrow exception" for claims of constitutional dimension; *LaCroix* v. *Board of Education*, 199 Conn. 70, 79, 505 A.2d 1233 (1986); that "applies when the challenge is to the constitutionality of the statute or regulation under which the board or agency operates, rather than to the actions of the board or agency." *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 426 n.5; see also *Conto* v. *Zoning Commission*, 186 Conn. 106, 115, 439 A.2d 441 (1982) (constitutional exception applies when party alleges "[a] constitutional defect in the [zoning] regulations whose enforcement is at issue"); *Helbig* v. *Zoning Commission*, 185 Conn. 294, 300, 440 A.2d 940 (1981) ("[o]ur estoppel doctrine does not preclude a party from attacking the constitutionality of a statute or [zoning] ordinance in an independent proceeding"). That exception to the exhaustion requirement also applies when a defendant raises "the constitutional validity of a municipal [zoning] ordinance [as a defense to] an action to enforce its provisions against [the defendant]." *Norwich* v. *Norwalk Wilbert Vault Co.*, 208 Conn. 1, 5, 544 A.2d 152 (1988).

In answering the complaint in the present case, the defendant raised multiple defenses predicated on protections embodied in our state and federal constitutions. See footnote 7 of this opinion. With one exception, those defenses all pertain to the actions of LaFountain in issuing the order, which are beyond the narrow purview of the constitutional exception. See *O & G Industries, Inc.* v. *Planning & Zoning Commission*, supra, 232 Conn. 426 n.5. The court, therefore, properly determined that the exhaustion requirement applied to those defenses.

The exception is the defendant's fifth special defense, in which the defendant argues that § 5.2.H.5 of the regulations is void for vagueness. Unlike its other defenses, the defendant's fifth special defense contests the constitutionality of the zoning regulation itself, which LaFountain enforced as the agent of the commission. See Wethersfield Zoning Regs., art. X, § 10.3.A. In that defense, the defendant challenges the language employed in the zoning regulation, rather than the actions of the official tasked with its enforcement. See *Addessi* v. *Connecticut Light & Power Co.*, 10 Conn. App. 86, 88, 521 A.2d 605 (1987) (noting that "the language of the statute . . . is central to the constitutional void for vagueness analysis"). For that reason, it properly may be raised as a special defense in this injunctive action. See *Norwich* v. *Norwalk Wilbert Vault Co.*, supra, 208 Conn. 7 ("where the plaintiff city has haled

the defendant into court, the defendant may defend on the ground of the general invalidity of the ordinance, without exhausting all available administrative remedies"). Moreover, this court has recognized that a void for vagueness challenge to a municipal zoning regulation qualifies under the constitutional exception to the exhaustion requirement. *Ogden* v. *Zoning Board of Appeals*, 157 Conn. App. 656, 666, 117 A.3d 986, cert. denied, 319 Conn. 927, 125 A.3d 202 (2015). The trial court improperly concluded otherwise. We therefore must consider the merits of the defendant's claim that § 5.2.H.5 of the regulations is void for vagueness, which claim the parties have briefed in this appeal.

## III

The void for vagueness doctrine "is a procedural due process concept that originally was derived from the guarantees of due process contained in the fifth and fourteenth amendments to the United States constitution. . . . [Our Supreme Court has] equated vagueness analysis under our state constitution with the corresponding federal constitutional analysis." (Citation omitted; internal quotation marks omitted.) *State* v. *McMahon*, 257 Conn. 544, 551 n.9, 778 A.2d 847 (2001), cert. denied, 534 U.S. 1130, 122 S. Ct. 1069, 151 L. Ed. 2d 972 (2002). "The vagueness rubric . . . is largely based on the requirements of fair notice and nondiscretionary standards. . . . Due process requires that a statute afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited." (Citation omitted; internal quotation marks omitted.) *Addessi* v. *Connecticut Light & Power Co.*, supra, 10 Conn. App. 87–88. Furthermore, "[a]n imprecise statute . . . may be sufficiently definite if it provides reasonably distinct boundaries for its fair administration." *State Management Assn. of Connecticut, Inc.* v. *O'Neill*, 204 Conn. 746, 758, 529 A.2d 1276 (1987).

Civil enactments like the zoning regulation at issue in the present case "must be definite in their meaning and application, but may survive a vagueness challenge by a lesser degree of specificity than in criminal statutes." (Internal quotation marks omitted.) Id., 757. "In order to pass constitutional muster, a zoning ordinance need not contain detailed and rigid standards that anticipate every conceivable factual situation. Indeed, [our Supreme Court has] recognized that detailed standards within a zoning ordinance that may be impractical or impossible to apply are not necessary, and that some flexibility is permitted when one standard cannot be adopted to all situations." *Campion* v. *Board of Aldermen*, 278 Conn. 500, 526, 899 A.2d 542 (2006). Furthermore, when the regulation at issue pertains to a specially permitted use,[24] additional leeway "must be afforded" in construing its wording. *Barberino Realty & Development Corp.* v. *Planning & Zoning Commis-*

*sion*, 222 Conn. 607, 620, 610 A.2d 1205 (1992).

A municipal zoning regulation, like a statute, "is not void for vagueness unless it clearly and unequivocally is unconstitutional, making every presumption in favor of its validity." (Internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, 277 Conn. 645, 672, 894 A.2d 285 (2006). "The party challenging a [regulation's] constitutionality has a heavy burden of proof; the unconstitutionality must be proven beyond all reasonable doubt." *Bottone* v. *Westport*, 209 Conn. 652, 657, 553 A.2d 576 (1989). That heavy burden requires proof "that the regulation complained of is impermissibly vague *as applied to the facts of the particular case.*" (Emphasis added.) *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 620; see also *Bombero* v. *Planning & Zoning Commission*, 218 Conn. 737, 743, 591 A.2d 390 (1991) (because regulations "do not exist in a vacuum," courts should evaluate "their purported vagueness . . . in the context of a specific factual situation, so that a court may resolve any ambiguities and, if necessary, interpret them in the light of those facts so as to avoid any potentially unconstitutional vagueness"); *Rocque* v. *Farricielli*, 269 Conn. 187, 205, 848 A.2d 1206 (2004) ("[t]o do otherwise . . . would be to put courts in the undesirable position of considering every conceivable situation which might possibly arise in the application of [the regulation]" [internal quotation marks omitted]). Accordingly, "outside the context of the first amendment, in order to challenge successfully the facial validity of a [regulation], a party is required to demonstrate . . . that the [regulation] may not be applied constitutionally to the facts of [the] case." (Internal quotation marks omitted.) Id. The determination of whether a zoning regulation is impermissibly vague is a question of law and thus subject to our plenary review. *Ogden* v. *Zoning Board of Appeals*, supra, 157 Conn. App. 669.

A

Because Regulations Are Permissive, Parking
And Storage of Commercial Vehicles
On Defendant's Property Must Be
Specifically Permitted

We begin our analysis by noting the overarching principle that any use of real property in the town is "prohibited if not clearly permitted" under the regulations.[25] Like the majority of municipalities in Connecticut, the town's regulations here are "permissive in nature, meaning that those matters not specifically permitted are prohibited." *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 653. The defendant, like all property owners in the town, therefore was charged with notice that *any* activity conducted on the property must be specifically permitted under the regulations. See *M & L Homes, Inc.* v. *Zoning & Planning Commission*, 187 Conn. 232, 244–45, 445 A.2d 591 (1982) (buyers of

property charged with knowledge of zoning regulations); *Kalimian* v. *Zoning Board of Appeals*, 65 Conn. App. 628, 632, 783 A.2d 506 (property owner "charged with notice" of "zoning regulations in effect" when purchasing property), cert. denied, 258 Conn. 936, 785 A.2d 231 (2001).[26]

The activity at issue in this case is the parking and storage of commercial vehicles on real property located in the BP zone. Only three sections of the regulations specifically address that activity.[27] The first two deal with accessory use. Section 3.5.5, which is part of the section of the regulations addressing accessory uses in residential zones, specially permits the parking of one commercial vehicle in a residential district, subject to certain requirements. Section 3.5.5.B details specific criteria regarding commercial vehicles that are to be considered in addition to the special permit requirements contained in article VIII of the regulations.[28] Section 3.5.5.C then indicates that those criteria *also* apply to the parking of commercial vehicles in business zones, stating: "The parking of commercial vehicles is permitted in business zones as an accessory use to the permitted use of the property after the issuance of Site Development Plan approval from the [commission] permitting such vehicles. The [c]ommission shall be governed by the submission requirements and review criteria of [§] 3.5.5.B of these regulations." Section 5.3.2, in turn, permits the "Parking of Commercial Vehicles, subject to the provisions of [§] 3.5.5.B" as an accessory use of properties in the BP zone following site plan approval by the commission. Accordingly, the parking and storage of commercial vehicles may be permitted as an accessory use pursuant to §§ 3.5.5.C and 5.3.2 of the regulations, as the court recognized in its memorandum of decision.[29] At the same time, nothing in either §§ 3.5.5 or 5.3.2 permits the parking and storage of commercial vehicles as a principal use.

Principal uses of real property permitted in the BP zone are set forth in § 5.2 of the regulations. The only conceivable subsection that could authorize the parking and storage of commercial vehicles as a principal use of the defendant's property is § 5.2.H.5, which provides that "[t]rucking or freight operations with complete visual screening of equipment and materials" may be conducted as a "Conditional Use Permitted Only After Special Permit Approval By the Commission" in the BP zone.[30] In the order at issue in this appeal, LaFountain cited that section and noted that it requires a special permit from the commission.

B

Language of § 5.2.H.5

On appeal, the defendant claims that § 5.2.H.5 of the regulations is void for vagueness. Its claim is premised on the fact that the words "trucking or freight opera-

tions" are not defined in the regulations. Without a definition, the defendant argues, it cannot ascertain whether the parking and storage of commercial vehicles is prohibited on its property. We disagree.

As this court repeatedly has recognized, "a zoning regulation is [not] necessarily vague because it contains a term that is not defined." *Ogden* v. *Zoning Board of Appeals*, supra, 157 Conn. App. 669–70; see also *Zarembski* v. *Warren*, 28 Conn. App. 1, 5, 609 A.2d 1039, cert. denied, 223 Conn. 918, 614 A.2d 831 (1992). Rather, undefined words in zoning regulations are accorded their ordinary meaning. *Property Group, Inc.* v. *Planning & Zoning Commission*, 226 Conn. 684, 692, 628 A.2d 1277 (1993); see also *Spero* v. *Zoning Board of Appeals*, 217 Conn. 435, 441, 586 A.2d 590 (1991) (words in zoning regulation "are to be interpreted in accordance with their natural and usual meaning"). Our Supreme Court has explained that "[i]f the meaning of a [regulation] can be fairly ascertained a [regulation] will not be void for vagueness since [m]any [regulations] will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties. . . . References to judicial opinions involving the [regulation], the common law, legal dictionaries, or treatises may be necessary to ascertain a [regulation's] meaning to determine if it gives fair warning." (Emphasis omitted; internal quotation marks omitted.) *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 673; accord *Heim* v. *Zoning Board of Appeals*, 289 Conn. 709, 717, 960 A.2d 1018 (2008) (appropriate to look to common understanding as expressed in dictionary when zoning regulations do not define term).

General Statutes (Rev. to 2015) § 14-1 (94), as amended by No. 15-46, § 1, of the 2015 Public Acts, defines "truck" as "a motor vehicle designed, used or maintained primarily for the transportation of property." Webster's Third New International Dictionary (2002)[31] defines trucking as "the process or business of transporting goods on trucks"; defines freight as "something that is loaded for transportation"; and defines "operations" as "a phase of a business or of business activity." Considered together, those definitions indicate that the term "trucking operations" pertains to all phases of the business of transporting goods on trucks. As LaFountain noted in his testimony at trial, the storage of trucks is a significant facet of a trucking business. The Court of Appeals of New Mexico similarly has recognized that "[p]art of the business of running a trucking enterprise involves the storage of the vehicles when they are not in use."[32] *Smart* v. *Carpenter*, 139 N.M. 524, 527, 134 P.3d 811 (App. 2006); see also *McKosky* v. *Planning & Zoning Commission*, Docket No. CV-13-6039112-S, 2014 WL 6996359 (Conn. Super. October 31, 2014) (upholding commission's finding that trucking business existed on property where owner stored truck on property); *Morgan* v. *Callaway*, Docket No. Civ. A

02A-02-002, 2003 WL 1387127, *2 (Del. Super. January 29, 2003) ("trucking operations" conducted on property where "the trucks were stored"); *Parish of Jefferson* v. *H4th & B, Inc.*, 155 So. 3d 567, 571 (La. App. 2013) ("the trucking business" included "storage of vehicles on the property"); *Bisson* v. *Eck*, 40 Mass. App. 942, 942, 667 N.E.2d 276 (noting that plaintiff "had used the land for the storage and maintenance of tractor trailer trucks and other vehicles in connection with his trucking business"), review denied, 423 Mass. 1107, 671 N.E.2d 951 (1996); *Lancaster Township* v. *Zoning Hearing Board*, 6 A.3d 1032, 1036 (Pa. Commw. 2010) (trucks stored on property "inseparable" from trucking business); *St. Croix County* v. *Bettendorf*, Docket No. 99-1776, 2000 WL 365860, *1 (Wis. App. April 1, 2000) (decision without published opinion, 235 Wis. 2d 277, 616 N.W.2d 525 [App. 2000]) ("[t]he absence of authorization for parking in the ordinances demonstrates that parking and storage are considered an integral part" of defendant's trucking business).

Furthermore, it bears emphasis that § 5.2.H.5 is a subsection of § 5.2.H—a section of the regulations titled "Industrial & *Storage* Uses." (Emphasis added.) That title is illuminating; see *P.X. Restaurant, Inc.* v. *Windsor*, 189 Conn. 153, 160, 454 A.2d 1258 (1983); and further underscores the applicability of § 5.2.H.5 to the storage of commercial vehicles by trucking companies in the BP zone.

In construing the words of a zoning regulation, "common sense must be used." *Smith* v. *Zoning Board of Appeals*, 227 Conn. 71, 92, 629 A.2d 1089 (1993), cert. denied, 510 U.S. 1164, 114 S. Ct. 1190, 127 L. Ed. 2d 540 (1994). To paraphrase the observation of our Supreme Court in *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 675, the defendant and its representatives were just as capable of utilizing their common sense when construing § 5.2.H.5 of the regulations as any other member of the general public, which dictates that the parking and storage of trucks is part and parcel of trucking operations.

C

Adequacy of Notice

The remaining question is whether the regulations provided the defendant adequate notice of the standards utilized to evaluate a request for that permitted use. See *Campion* v. *Board of Aldermen*, supra, 278 Conn. 526. That query must be resolved in light of the "specific factual situation" presented in this case. *Bombero* v. *Planning & Zoning Commission*, supra, 218 Conn. 743.

The specific factual situation here is a property owner that knowingly allowed trucking companies to store their commercial vehicles on its property. Tartaglia acknowledged that most of his tenants were registered

as transport companies, such as Igor Stefak, who operated Igor Transportation, LLC. Tartaglia testified that Stefak had "a United States Department of Transportation carrier license" and was storing "ten or eleven" commercial vehicles on the property at the time of trial. M&A Express Transport, LLC, is another trucking company that stored its trucks on the property. As Tartaglia emphatically stated at the subsequent contempt hearing, the defendant's tenants were "registered as transport companies or courier companies. Indeed, that is their business. They transport through the United States Postal Service, pharmaceutical companies, Amazon. At my property, they operate offices and they park their trucks. . . . We have never denied this." It suffices to say, then, that the defendant was cognizant that trucking companies were storing their commercial vehicles on the property. Moreover, the photographs admitted into evidence demonstrate that numerous commercial vehicles were stored on the property, some bearing the name of a particular trucking company such as "Igor Transportation, LLC," "VM Express," and "M& A Express Transport, LLC."

Because the regulations here are permissive in nature, the defendant is charged with knowledge that the storage of those commercial vehicles on the property must be specifically permitted thereunder. See Wethersfield Zoning Regs., art. II, § 2.1.A; *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 656. Section 5.2.H.5 is the only provision in the regulations that ostensibly encompasses the storage of commercial vehicles as a principal use, as it specifically permits trucking operations as a conditional principal use in the BP zone.

With respect to the standards governing its application, § 5.2.H.5 expressly requires "complete visual screening of equipment" on the property.[33] Section 5.2.H.5 further provides that owners of property in the BP zone must obtain a special permit for a conditional use from the commission before engaging in trucking operations on the property. As our Supreme Court has explained, "a specially permitted use is ordinarily allowed in any existing zoning district, provided, of course, that the site plan conforms to the regulations governing special permits. Unlike a permitted use wherein the commission has already made the determination that a particular use is appropriate in a particular area, in reviewing a special permit application the commission must examine the proposed site plan submitted with the application and determine, inter alia, whether it would be compatible with the zoning district and the existing structures permitted in that zone as of right. . . . The commission, therefore, must tailor its review of each site plan accompanying a special permit application to the particular zoning district in which the landowner seeks to develop." *Barberino Realty & Development Corp.* v. *Planning & Zoning Commis-*

*sion*, supra, 222 Conn. 620.

The regulations here contain detailed criteria that govern special permit applications; see Wethersfield Zoning Regs., art. VIII; as well as criteria specific to the storage of commercial vehicles. See Wethersfield Zoning Regs., art. III, § 3.5.5.[34] Accordingly, the commission, in evaluating a request for a special permit pursuant to § 5.2.H.5, must consider, inter alia, whether "the location and size of the proposed use . . . will be in harmony with the orderly development of the area and compatible with other existing uses"; Wethersfield Zoning Regs., art. VIII, § 8.1.A; whether the proposed use will "alter the essential characteristics of the area or adversely affect property value in the neighborhood"; Wethersfield Zoning Regs., art. VIII, § 8.2.B; whether the property in question has suitable access and parking to accommodate the proposed use; Wethersfield Zoning Regs., art. VIII, § 8.4; and whether the proposed use will "have any detrimental effects upon the public health, safety, welfare, convenience, or property values." Wethersfield Zoning Regs., art. VIII, § 8.8.A.

It nevertheless remains that the commission's "[r]eview of a special permit application is inherently fact-specific, requiring an examination of the particular circumstances of the precise site for which the special permit is sought and the characteristics of the specific neighborhood in which the proposed [use] would be [made]." *Municipal Funding, LLC* v. *Zoning Board of Appeals*, 270 Conn. 447, 457, 853 A.2d 511 (2004). That "fact-specific inquiry makes the [commission's] approval of a similar facility at another site . . . legally irrelevant." Id. For that reason, our Supreme Court has instructed that a commission "must be afforded" additional leeway "in the wording of the regulations" when a vagueness challenge to a specially permitted use regulation is raised. *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, supra, 222 Conn. 620. Affording that leeway, we conclude that § 5.2.H.5 provided the defendant with adequate notice of the standards utilized to evaluate a special permit request for that conditional use.

D

CONCLUSION

In light of the foregoing, and making every presumption in favor of its validity, we conclude the defendant has not met its burden of demonstrating beyond all reasonable doubt that § 5.2.H.5, as applied to the specific facts of this case, clearly and unequivocally is impermissibly vague. See *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 672. Section 5.2.H.5 sufficiently apprises persons of ordinary intelligence that the storage of commercial vehicles by trucking companies as a principal use of property in the BP zone requires a special permit from the commission.

## IV

The defendant also claims that the court improperly (1) interpreted § 5.2.H.5 and (2) substituted its interpretation for that of the commission in so doing. We do not agree.

The defendant's first claim does not merit extensive discussion. In its decision, the court accorded the phrase "trucking or freight operations" its ordinary meaning, as gleaned from definitions contained in our General Statutes and dictionaries. The court's construction fully comports with that set forth in part III B of this opinion.

Moreover, the court's construction is consistent with the apparent intent of the commission in enacting § 5.2.H.5. See *Wood* v. *Zoning Board of Appeals*, 258 Conn. 691, 699, 784 A.2d 354 (2001) ("in construing regulations, our function is to determine the expressed legislative intent"). The explicitly permissive nature of the regulations; see part III A of this opinion; demonstrates that the commission, in enacting those regulations, intended to confine the principal uses of property in the BP zone to those specified in § 5.2. Furthermore, the fact that the commission classified trucking operations conducted in the BP zone as a "conditional use" requiring special permit approval from the commission indicates that it wanted to retain an additional degree of oversight and control over such activities, consistent with the primary aim of zoning, which "is to promote the health, safety, welfare and prosperity of the community." *Langbein* v. *Board of Zoning Appeals*, 135 Conn. 575, 580, 67 A.2d 5 (1949); see also *Smith* v. *Planning & Zoning Board*, 3 Conn. App. 550, 554, 490 A.2d 539 (1985) ("purpose of zoning is to regulate property uses . . . in a manner to advance the public welfare"), aff'd, 203 Conn. 317, 524 A.2d 1128 (1987). That concern for the public welfare also is reflected in the fact that § 5.2.H.5 expressly requires "complete visual screening of equipment" associated with such trucking operations. We reiterate that § 5.2.H.5 is a subsection of the section of the regulations that outlines permissible "Industrial and *Storage* Uses." (Emphasis added.) Wethersfield Zoning Regs., art. V, § 5.2.H. Mindful that zoning regulations "are to be construed as a whole"; *Smith* v. *Zoning Board of Appeals*, supra, 227 Conn. 91; we conclude that the court properly interpreted the term trucking operations, as it is used in § 5.2.H.5, to encompass the storage of commercial vehicles by trucking companies on property located in the BP zone.

We likewise find no merit to the defendant's contention that the court improperly substituted its interpretation of § 5.2.H.5 for that of the commission. Although a municipal planning and zoning commission often interprets undefined terms in the first instance, it is well established that the proper construction of a

zoning regulation presents a question of law over which a court exercises plenary review. *Hasychak* v. *Zoning Board of Appeals*, 296 Conn. 434, 442, 994 A.2d 1270 (2010). For that reason, our courts are not bound by the legal interpretation of a regulation provided by a planning and zoning commission or zoning board of appeals.[35] See *Jalowiec Realty Associates, L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 414, 898 A.2d 157 (2006); *Northeast Parking, Inc.* v. *Planning & Zoning Commission*, 47 Conn. App. 284, 293, 703 A.2d 797 (1997), cert. denied, 243 Conn. 969, 707 A.2d 1269 (1998). Because the present case involves a question as to the proper construction of § 5.2.H.5, the trial court was obligated to conduct a plenary review thereof. The defendant's claim, therefore, is baseless.

V

The defendant next argues that the court abused its discretion in granting a permanent injunction in favor of the plaintiffs. We disagree.

"A prayer for injunctive relief is addressed to the sound discretion of the court and the court's ruling can be reviewed only for the purpose of determining whether the decision was based on an erroneous statement of law or an abuse of discretion." (Internal quotation marks omitted.) *Maritime Ventures, LLC* v. *Norwalk*, 277 Conn. 800, 807, 894 A.2d 946 (2006). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only [when] an abuse of discretion is manifest or [when] injustice appears to have been done." (Internal quotation marks omitted.) *Weiss* v. *Smulders*, 313 Conn. 227, 261, 96 A.3d 1175 (2014).

The plaintiffs in the present case brought this action pursuant to § 8-12. As our Supreme Court has explained, when an injunction is sought pursuant to that statute, "the town is relieved of the normal burden of proving irreparable harm and the lack of an adequate remedy at law because § 8-12 by implication assumes that no adequate alternative remedy exists and that the injury was irreparable. . . . The town need prove only that the [regulations] were violated." (Citation omitted.) *Gelinas* v. *West Hartford*, 225 Conn. 575, 588, 626 A.2d 259 (1993).

At trial, the court was presented with testimonial, documentary, and photographic evidence indicating that commercial vehicles were being stored by trucking companies on the defendant's property in contravention of the regulations. The court, as arbiter of credibility, was free to credit that evidence. See *Cadle Co.* v. *D'Addario*, 268 Conn. 441, 462, 844 A.2d 836 (2004) ("In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . It is within the

province of the trial court, as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence." [Citation omitted; internal quotation marks omitted.]). In granting injunctive relief, the court ordered an immediate cease to "all trucking operations" that are (1) "not associated with a specific tenant business use on the property" and (2) "conducted without a special permit . . . ." The court further retained jurisdiction "[t]o the extent there is a question on an accessory use" with respect to particular vehicles on the property. In the present case, we cannot say that the court abused its discretion in so doing. Our review of the record convinces us that the court properly exercised its discretion in fashioning permanent injunctive relief in favor of the plaintiffs.

## VI

The defendant also claims that the injunction "lacks sufficient clarity and definiteness." That claim is predicated on a mischaracterization of the actual wording of the court's decision. In its principal appellate brief, the defendant misquotes that decision to state: " 'If [the defendant] *wishes to* conduct such trucking or freight operations the defendant must first apply for and receive a special permit to do so.' " (Emphasis added.) The defendant then argues that the injunction "was conditional on a state of mind that was contradicted by . . . testimony [that] indicated that the defendant 'did not wish to conduct trucking or freight operations' . . . ."

Contrary to the defendant's contention, it remains that the salient portion of the court's memorandum of decision states: "[T]he defendant must comply with the town's regulations. If [the defendant] *seeks* to conduct such trucking and freight operations on the property, it must first obtain a special permit to do so . . . ." (Emphasis added.) By its plain terms, that order informed the defendant that it must obtain a special permit in accordance with the regulations in order to conduct trucking or freight operations on its property as a principal use. The court's order thus was sufficiently clear and definite in its terms. See *Castonguay* v. *Plourde*, 46 Conn. App. 251, 268–69, 699 A.2d 226, cert. denied, 243 Conn. 931, 701 A.2d 660 (1997).

## VII

The defendant also challenges the court's imposition of a "fine of $50 per day from January 22, 2016, to the date of this [April 20, 2017] order" pursuant to § 8-12. The defendant claims that the court abused its discretion in imposing that fine because the plaintiffs failed to prove a public nuisance caused by the storage of commercial vehicles on the property. The defendant alternatively argues that any daily fine should be imposed from the April 20, 2017 date of the court's decision. We do not agree.

Section 8-12 provides in relevant part that "[t]he owner . . . of any . . . premises where a violation of any provision of such regulations has been committed or exists . . . shall be fined not less than ten dollars or more than one hundred dollars for each day that such violation continues . . . ." That statute "authorizes the trial court to exercise its discretion in determining whether to award daily fines." *Monroe* v. *Renz*, 46 Conn. App. 5, 14, 698 A.2d 328 (1997). This court's review of a trial court's decision to impose a daily fine pursuant to § 8-12 is governed by the abuse of discretion standard. *Stamford* v. *Stephenson*, supra, 78 Conn. App. 824.

We reject the defendant's assertion that proof of a public nuisance is a prerequisite to the imposition of such fines.[36] Section 8-12 does not contain any such requirement and the defendant has provided no authority mandating such proof. As this court has observed, "[t]he purpose of § 8-12 is to provide a means to enforce the zoning regulations and to prevent an unlawful use" of property; id., 826; and the imposition of fines under that statute is intended to deter violations of the zoning regulations. *Monroe* v. *Renz*, supra, 46 Conn. App. 14. To obtain relief under § 8-12, the plaintiffs here needed to "prove only that the [regulations] were violated." *Gelinas* v. *West Hartford*, supra, 225 Conn. 588. When that burden is met, the imposition of a daily fine is left to the sound discretion of the trial court. *Monroe* v. *Renz*, supra, 14. We perceive no abuse of discretion in the present case.

The defendant alternatively argues that the daily fine imposed by the court should not begin to accrue until the date of the trial court's decision in this case. We disagree. In the order sent to the defendant on November 18, 2015, LaFountain informed the defendant that, in his view, the existing use of the property violated the regulations—specifically, trucking operations that were not accessory to a principal use and for which a special permit had not been secured. The defendant was free to appeal that determination to the board, which it initially did on December 2, 2015. The defendant withdrew that administrative appeal on January 22, 2016. In its memorandum of decision, the court imposed a daily fine from that date until "the [April 20, 2017] date of this order . . . ." As this court has observed, the trial court "has discretion to impose [daily] fines, as the circumstances require." *Stamford* v. *Stephenson*, supra, 78 Conn. App. 826. We conclude that the court did not abuse its discretion in assessing a daily fine for that time period.

VIII

The defendant next claims that the court abused its discretion in awarding costs and attorney's fees pursuant to § 8-12 without making a finding that it wilfully violated the zoning regulations. We disagree.

Section 8-12 provides in relevant part: "If the court renders judgment for such municipality and finds that the violation was wilful, the court shall allow such municipality its costs, together with reasonable attorney's fees to be taxed by the court. . . ." Like daily fines, the imposition of costs and attorney's fees under § 8-12 is entrusted to the discretion of the trial court. *Stamford* v. *Stephenson*, supra, 78 Conn. App. 824. As this court has explained, "the use of 'shall' in § 8-12 does not create a mandatory duty to impose fines. . . . Rather, a court has discretion to impose such fines, as the circumstances require. . . . [T]he case law allows the court to use its discretion to impose fines and to award attorney's fees." (Citations omitted.) Id., 825–26.

In their complaint, the plaintiffs alleged ongoing violations of the regulations on the defendant's property in violation of the order. After noting that the action was brought pursuant to § 8-12, the plaintiffs requested, inter alia, an award of "costs and reasonable attorney's fees" pursuant to that statute. Such an award requires a finding "that the violation was wilful . . . ." General Statutes § 8-12; see also *Monroe* v. *Renz*, supra, 46 Conn. App. 11–13.[37]

In its memorandum of decision, the court noted that a decision to grant or deny a request for injunctive relief must "take into account the gravity and willfulness of the violation . . . ." (Internal quotation marks omitted.) The court also stated that "[a] wilful act is one done intentionally or with reckless disregard of the consequences of one's conduct. . . . Willfulness in violating a [zoning regulation] implies not so much malevolent design as action with knowledge that one's acts are proscribed or with careless disregard for their lawfulness or unlawfulness." (Internal quotation marks omitted.) The court then made a series of findings regarding the defendant's conduct subsequent to the issuance of the order instructing the defendant to cease and desist all trucking operations on the property. The court found that "[t]he town was concerned with the trucking operations on the property, and the evidence indicates the defendant *willingly* allowed such a use." (Emphasis added.) The court further found that "Tartaglia's purported lack of knowledge in his testimony about the actual operations or the specific tenants storing trucks was not persuasive. . . . Notwithstanding Tartaglia's protestations . . . there is no evidence that weighs in the defendant's favor." In light of those findings, the court, in fashioning relief, awarded the plaintiffs "costs and attorney's fees to be established at a hearing at a later date."

This case thus is one in which the trial court was presented with a request for an award of costs and attorney's fees that required a finding of wilfulness. In its decision, the court first set forth the applicable standard for wilfulness in the zoning violation context

and then made a finding that the defendant "willingly" allowed a use of its property in contravention of the regulations after the order was issued, noting that there was "no evidence that weighs in the defendant's favor." Given those findings, we conclude that the court did not abuse its discretion in awarding costs and attorney's fees to the plaintiffs pursuant to § 8-12.

IX

As a final matter, the defendant challenges the court's finding of contempt. It raises two distinct claims in this regard. First, the defendant claims that the court lacked subject matter jurisdiction over the plaintiffs' motion for contempt. Second, the defendant claims that the motion for contempt was premature and, thus, improperly granted.[38] We are not persuaded.

Before considering the defendant's specific claims, we note certain fundamental precepts. "It has long been settled that a trial court has the authority to enforce its own orders. This authority arises from the common law and is inherent in the court's function as a tribunal with the power to decide disputes. . . . The court's enforcement power is necessary to preserve its dignity and to protect its proceedings. . . . A party to a court proceeding must obey the court's orders unless and until they are modified or rescinded, and may not engage in self-help by disobeying a court order to achieve the party's desired end." (Citations omitted; internal quotation marks omitted.) *O'Brien* v. *O'Brien*, 326 Conn. 81, 96–97, 161 A.3d 1236 (2017).

"The court has an array of tools available to it to enforce its orders, the most prominent being its contempt power. . . . Our law recognizes two broad types of contempt: criminal and civil. . . . Civil contempt . . . is not punitive in nature but intended to coerce future compliance with a court order, and the contemnor should be able to obtain release from the sanction imposed by the court by compliance with the judicial decree. . . . A civil contempt finding thus permits the court to coerce compliance by imposing a conditional penalty, often in the form of a fine or period of imprisonment, to be lifted if the noncompliant party chooses to obey the court." (Citations omitted; internal quotation marks omitted.) Id., 97–98.

"To impose contempt penalties . . . the trial court must make a contempt finding, and this requires the court to find that the offending party wilfully violated the court's order; failure to comply with an order, alone, will not support a finding of contempt. . . . Rather, to constitute contempt, a party's conduct must be wilful. . . . Whether a party's violation was wilful depends on the circumstances of the particular case and, ultimately, is a factual question committed to the sound discretion of the trial court. . . . Without a finding of wilfulness, a trial court cannot find contempt and, it follows, cannot

impose contempt penalties." (Citations omitted; internal quotation marks omitted.) Id., 98–99; see also *Bolat* v. *Bolat*, 182 Conn. App. 468, 480, 190 A.3d 96 (2018) (factual findings of contempt and requisite wilfulness both dependent on underlying facts and circumstances).

"We review the court's factual findings in the context of a motion for contempt to determine whether they are clearly erroneous. . . . A factual finding is clearly erroneous when it is not supported by any evidence in the record or when there is evidence to support it, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Bolat* v. *Bolat*, supra, 182 Conn. App. 479–80.

### A

The defendant first raises a jurisdictional challenge to the motion for contempt filed by the plaintiffs. Because the present case involves indirect civil contempt,[39] the defendant argues that the constitutional guarantees of due process "[seem] to require a separate proceeding, with separate service" for the court to have subject matter jurisdiction over the plaintiffs' motion.

The defendant has provided this court with no authority indicating that a court lacks subject matter jurisdiction over a postjudgment motion for indirect civil contempt unless a separate and distinct proceeding is commenced in the Superior Court. Rather, the court's jurisdiction over such motions stems from its inherent authority to enforce its orders. As our Supreme Court has explained, "the trial court's continuing jurisdiction to effectuate prior judgments . . . is not separate from, but, rather, *derives* from, its equitable authority to vindicate judgments. . . . [S]uch equitable authority does not derive from the trial court's contempt power, but, rather, from its inherent powers." (Emphasis in original.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, 260 Conn. 232, 241, 796 A.2d 1164 (2002); see also *Rozbicki* v. *Gisselbrecht*, 152 Conn. App. 840, 846–47, 100 A.3d 909 (2014), cert. denied, 315 Conn. 922, 108 A.3d 1123 (2015). We therefore reject the defendant's claim that the court lacked subject matter jurisdiction over the plaintiffs' postjudgment motion for contempt.

With respect to service of process requirements, our Supreme Court has recognized that "due process of law . . . requires that one charged with contempt of court be advised of the charges against him, have a reasonable opportunity to meet them by way of defense or explanation, have the right to be represented by counsel, and have a chance to testify and call other witnesses in his behalf, either by way of defense or explanation." (Internal quotation marks omitted.) *Cologne* v. *Westfarms Associates*, 197 Conn. 141, 150, 496 A.2d 476

(1985). "Adjudication of a motion for civil contempt . . . implicates these constitutional safeguards. . . . [W]here the alleged contempt does not occur in the presence of the court . . . process is required to bring the party into court, and the acts or omissions constituting the offense are to be proved as in ordinary cases." (Internal quotation marks omitted.) *Alldred* v. *Alldred*, 132 Conn. App. 430, 434–35, 31 A.3d 1185 (2011), appeal dismissed, 303 Conn. 926, 35 A.3d 1075 (2012). Accordingly, this court has held that "a postjudgment motion for contempt that is filed for the purpose of enforcing an antecedent judicial order requires proper service of process." Id., 435.

Service of process implicates the personal jurisdiction of the court. Id., 431. It is well established that "[a] challenge to a court's personal jurisdiction . . . is waived if not raised by a motion to dismiss within thirty days . . . ." *Lostritto* v. *Community Action Agency of New Haven, Inc.*, 269 Conn. 10, 32, 848 A.2d 418 (2004); see also Practice Book § 10-32 ("[a]ny claim of lack of jurisdiction over the person or insufficiency of process or insufficiency of service of process is waived if not raised by a motion to dismiss"). In the present case, the plaintiffs filed their motion for contempt on May 4, 2017. The defendant thereafter did not file a timely a motion to dismiss that contempt motion. Rather, the defendant on May 11, 2017, filed an objection that addressed the merits of the plaintiffs' motion for contempt. The court subsequently held a hearing on the plaintiffs' motion for contempt on July 6, 2017, at which the defendant presented evidence, including the testimony of Tartaglia. During closing arguments at that hearing, the defendant's counsel for the first time moved to dismiss the plaintiffs' motion due to allegedly improper service of process.

In its memorandum of decision on the motion for contempt, the court concluded that the defendant "clearly waived" that objection to the plaintiffs' postjudgment motion for contempt because it did not file a timely motion to dismiss, as required by Practice Book § 10-30 (b), and did not file a supporting memorandum of law, as required by Practice Book § 10-30 (c).[40] We agree. Furthermore, by filing an objection to the plaintiffs' motion that was accompanied by a memorandum of law and then fully participating in the contempt hearing, the defendant submitted to the jurisdiction of the court. See *Narayan* v. *Narayan*, 305 Conn. 394, 402, 46 A.3d 90 (2012) (personal jurisdiction may be created through consent). We therefore conclude that the court properly denied the defendant's untimely motion to dismiss.

B

The defendant also claims that the court improperly granted the plaintiffs' motion for contempt. Because it allegedly had taken steps to secure compliance with

the regulations, the defendant argues that the plaintiffs' filing of the motion was premature. Once again, we disagree with the defendant.

We begin by noting that it is "within the equitable powers of the trial court to effectuate its prior judgment *at any time*, regardless of whether the noncompliant party [is] in contempt." (Emphasis added; internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Plan & Zoning Commission*, supra, 260 Conn. 244. It is undisputed that the defendant did not request a discretionary stay of the court's order pursuant to Practice Book § 61-12 during the pendency of this appeal. For that reason, the plaintiffs were entitled to file their motion for contempt any time after the permanent injunction was issued. The defendant has provided no legal authority to the contrary.

We therefore turn to the substance of the defendant's claim that the court improperly found it in contempt. The evidence adduced at the July 6, 2017 contempt hearing substantiates the court's finding that the zoning violations that gave rise to this enforcement action "still exist" on the property. LaFountain testified that he had inspected the property on four separate occasions over the course of more than two months. Each time, he observed numerous commercial vehicles stored in the rear lot of the property.[41] During those inspections, LaFountain took photographs, twenty-one of which were admitted into evidence at the contempt hearing. Those photographs depict the storage of commercial vehicles on the property that belong to trucking businesses. In light of his firsthand observation of the property in the months following the issuance of the permanent injunction, LaFountain testified that he believed that a zoning violation continued to exist on the property.

After the plaintiffs rested, the defendant called Tartaglia to the witness stand. In his testimony, Tartaglia confirmed that trucking businesses continued to store trucks on the property. Tartaglia also admitted that the defendant had not applied for a special permit to conduct trucking operations on the property. In addition, Tartaglia testified that he believed that the permanent injunction issued by the court months earlier was "unjust, unfair, inequitable and an affront," stating "that's my opinion and I'm entitled to it." He nevertheless described certain steps he had taken that allegedly were intended to secure compliance with the regulations. Specifically, Tartaglia testified that he had served notices to quit on three tenants due to violations of the terms of their leases; copies of those notices were admitted into evidence. At the same time, Tartaglia professed ignorance when asked whether the defendant subsequently had commenced eviction proceedings in the Superior Court against those tenants. Tartaglia also testified that he had provided those tenants with

instructions on how to apply for a special permit with the town.[42]

In addition, Tartaglia acknowledged that the lease agreements with those tenants, which were submitted into evidence at the contempt hearing, authorized the defendant to immediately revoke parking privileges and remove a tenant's vehicles from the property at any time.[43] Furthermore, the defendant submitted into evidence a copy of the letter that it sent to Stefak shortly after the permanent injunction was granted, in which Tartaglia informed Stefak that the defendant was cancelling his lease and "any parking privileges are immediately revoked." On cross-examination, Tartaglia was asked if he had "attempt[ed] to lock the gate" or taken any other steps to "keep the box trucks out of" the property. Tartaglia admitted that he had "done no such thing." He also stated that " if someone in this [courtroom] thinks that we should go there and club them over the head, or throw [the tenants] out, I'm not [going to] do that because that's not what a businessman would do; and I wouldn't do that to any other person, especially decent people who've done no harm. And if that doesn't accommodate the town, I'm very sorry. But I can't do more than that because it would be wrong. Of course, it would be improper. And it's uncalled for in this case. Uncalled for. And if I'm acting from decency and proper business judgment and moving as quick as we can, and that's not quick enough for someone in this [courtroom], then I think someone in this [courtroom] says that I was unreasonable."[44]

The defendant nonetheless claims that, in light of the fact that Tartaglia sent eviction notices and special permit application instructions to certain tenants, the court improperly granted the plaintiffs' motion for contempt. At its essence, the defendant's claim is that it operated under a good faith belief that such efforts constituted compliance with the court's order, which precludes a finding that it wilfully violated that order.

The court's order plainly states that "the defendant must comply with the town's regulations. If [the defendant] seeks to conduct such trucking and freight operations on the property, it must first obtain a special permit to do so. Hence, all trucking operations not associated with a specific tenant business use on the property or any trucking and freight operations being conducted without a special permit must immediately cease." (Footnote omitted.) Like the order at issue in *Gill* v. *Shimelman*, 180 Conn. 568, 571, 430 A.2d 1292 (1980), the injunction here "ordered the company and its owners, not the tenants, to stop" the prohibited activity on its property. It is undisputed that the defendant neither applied for nor received a special permit to conduct trucking operations on its property.

The only question, then, is whether a good faith dispute as to the mandate of the court's order precludes

a finding of wilful contempt. See *Sablosky* v. *Sablosky*, 258 Conn. 713, 718, 784 A.2d 890 (2001). Whether a good faith dispute exists depends on the circumstances of the particular case and, thus, is a factual question "committed to the sound discretion of the trial court." *O'Brien* v. *O'Brien*, supra, 326 Conn. 98. Our review of that factual determination is governed by the clearly erroneous standard of review; *Bolat* v. *Bolat*, supra, 182 Conn. App. 479–80; a "deferential standard" under which reviewing courts must not "examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. Rather, we focus on the conclusion of the trial court, as well as the method by which it arrived at that conclusion, to determine whether it is legally correct and factually supported. . . . On appeal, we do not retry the facts . . . ." (Internal quotation marks omitted.) *Marchesi* v. *Board of Selectmen*, 328 Conn. 615, 643, 181 A.3d 531 (2018).

The trial court in the present case rejected the defendant's purported good faith understanding of its order. As it found in its memorandum of decision: "[T]he testimony and the evidence is clear that the subject violations still exist. Indeed, many of the newest pictures of the property submitted into evidence by the plaintiffs show the same type of—or perhaps the exact same— trucks shown in pictures submitted into evidence at trial. . . . Tartaglia does not dispute that the trucks are still parked on the property. Instead, he attempts to separate his responsibilities from that of his tenants and to individualize the truck owners as the offending violators. These disingenuous attempts to avoid compliance were and are rejected. The defendant has two choices: it can either conduct its operations in compliance with the zoning regulations—which includes its rental policies as to [trucking companies]—or cease its operations that violate the regulations. Despite Tartaglia's protestations, the defendant has the ability to comply." The court thus granted the plaintiffs' motion for contempt.

In finding that the defendant's failure to comply with its order was not excused by its "disingenuous attempts to avoid compliance" and that a finding of contempt was therefore warranted, the court necessarily concluded that the defendant's violation of the court order was wilful.[45] On our review of the record before us, we decline to disturb that factual determination. Accordingly, the defendant's claim must fail.

The appeal is dismissed with respect to the defendant's challenge to the standing of LaFountain. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] For clarity, in this opinion we refer to the town of Wethersfield and LaFountain collectively as the plaintiffs and individually by name.

[2] As the trial court noted in its memorandum of decision, "[e]vidently, the violation was discovered as a result of a due diligence inquiry by a prospec-

tive buyer checking on the zoning compliance status of the property. . . . LaFountain investigated, took a series of photographs . . . and discovered the alleged violations. Consequently, he refused to provide the routine letter of compliance." (Citation omitted.)

[3] In the application that it submitted to the board, the defendant alleged in relevant part:

"1. [The order] is impermissibly vague, lacks specificity and is not based on sufficient standards, because, among other reasons; the phrase 'trucking and freight operations' as used in the [o]rder is not . . . defined in the [regulations] nor in [t]he [o]rder.

"2. The [o]rder denies and violates the requirements of substantive and procedural due process of law under the United States Constitution and the Constitution of the State of Connecticut and other federal and state laws.

"3. The [o]rder denies and violates the property owner's right of equal protection law under the United States Constitution and the Constitution of the State of Connecticut and other federal and state laws.

"4. The [o]rder seeks to enforce changes in the [regulations] ex post facto and in violation of the [defendant's] rights under the United States Constitution and the Constitution of the State of Connecticut and other federal and state laws.

"5. As stated in the [o]rder, the use and occupancy of the property for, among other things, commercial truck parking is a permissible accessory use. Nevertheless, to the extent that the [o]rder alleges otherwise, the use and occupancy of the property for, among other things, commercial truck parking by owner and its tenants, is a prior, non-conforming use which may not be revoked or limited by the [o]rder . . . .

"6. The law alleged to have been violated in the [o]rder is an illegal application of 'spot zoning,' otherwise not made under or inconsistent with the applicable comprehensive plan, otherwise abusive and violative of property owner's rights.

"7. The [o]rder is not based on substantial evidence.

"8. The [o]rder is otherwise not in conformance with law, an abuse of discretion and made without and/or in excess of, legal authority.

"9. The Zoning Regulation alleged to have been violated in the [o]rder was not instituted in accordance with Connecticut [l]aw and is therefore void and unenforceable." (Emphasis omitted.)

[4] General Statutes § 8-12 provides in relevant part: "If any . . . land has been used, in violation of any provision . . . of any bylaw, ordinance, rule or regulation made under authority conferred hereby, any official having jurisdiction, in addition to other remedies, may institute an action or proceeding to prevent such unlawful . . . use or to restrain, correct or abate such violation . . . ."

[5] Section 5.2.H.5 of the regulations provides that "[t]rucking or freight operations with complete visual screening of equipment and materials" may only be conducted as a "Conditional Use" in the BP zone after a special permit is approved by the commission. It is undisputed that no such special permit was secured for the property.

[6] "Accessory Use" is defined in § 2.3.A of the regulations as "[a] use subordinate and customarily incident to a principal use on the same lot in compliance with the same standards and procedures that govern the principal use of a property." Pursuant to § 5.3.A.1 and A.2 of the regulations, "Parking . . . for the principal use" and "Parking of Commercial Vehicles" are both permissible accessory uses in the BP zone.

[7] The defendant alleged the special defenses of (1) existing nonconforming use; (2) laches; (3) selective enforcement; (4) "balancing of the equities" with respect to "the defendant being allowed to continue its present use of the [property] without any injunction"; (5) "impermissibly vague [zoning] regulation"; and (6) "unconstitutionality of the [order]." With respect to the last defense, the defendant alleged that the issuance of the order by LaFountain allegedly violated its federal and state constitutional rights to substantive due process, procedural due process, and equal protection under the law. In addition, the defendant claimed that the order was "impermissibly vague"; that it sought "to enforce changes in the [regulations] ex post facto"; that it was "not based on specific substantial evidence"; and that it was "made with malice, recklessness and or negligence of such a degree that it is not in conformance with substantive and procedural due process . . . and is otherwise an unconstitutional abuse of discretion . . . ." Many of those defenses previously were raised in the defendant's December 2, 2015 appeal to the board. See footnote 3 of this opinion.

[8] The vehicles in those photographs primarily are box trucks and tractor

trailers, which are classified as commercial vehicles under § 2.3.C of the regulations. See footnote 16 of this opinion. As this court has observed, "[a] box truck is a utility truck with a box type body . . . ." *Ventura* v. *East Haven*, 170 Conn. App. 388, 391 n.3, 154 A.3d 1020, cert. granted on other grounds, 325 Conn. 905, 156 A.3d 537 (2017). A tractor trailer "is a vehicle with a cab and a detachable trailer." *Holmes* v. *United States*, United States District Court, Docket No. C 08-5619 PJH, 2011 WL 1791596, *2 (N.D. Cal. May 10, 2011); see also General Statutes (Rev. to 2015) § 14-1 (93), as amended by No. 15-46, § 1, of the 2015 Public Acts (defining "[t]ractor-trailer unit" as "a combination of a tractor and a trailer or a combination of a tractor and a semitrailer").

[9] In her December 18, 2015 complaint, which was admitted into evidence as a full exhibit, Lynn Burdick stated: "I am writing to identify my concern over the trailer trucks that have been parked [on the property] for the past several months. I am aware the landlord has the opportunity to rent this area to bring in revenue to his company but this is inappropriate and unacceptable to the homeowners at the [condominium complex]. The [rear] parking lot is opposite our condominium complex and some of the owners have to face large tractor trailers coming and going at all hours of the day and night. This is a residential area housing 172 units which was built in 1985. Until a few years ago there [was] a line of trees which were a buffer between these two properties. The landlord cut those trees down a few years ago and as a result these condominiums are now directly exposed to this view and noise ongoing. I would appreciate anything you can do to assist in eliminating this activity on this property. Thank you."

[10] One example of Tartaglia's "tag system" is reflected in the October 1, 2013 "Month To Month Equipment—Parking Lot Use License" agreement signed by Tartaglia and Adisa Jauzovic that was admitted into evidence at trial. That agreement states that Jauzovic shall receive seven tags to display on vehicles stored in the "rear parking lot" of the property in exchange for a "storage fee" of $600 per month. It further provides that "[u]nder no circumstances is the [l]icensee permitted to enter any building on the [p]roperty or to use or avail himself of any utility or other facility appurtenant to the [p]roperty . . . without the express written permission of [Tartaglia]."

[11] That document also features a handwritten notation on the upper right corner of its first page, which states "3 Trucks / M&A permitted."

[12] With respect to such tenants, LaFountain testified that if the "principal use" of the property was "the trucking and freight operation," the tenant could not claim that the parking of commercial vehicles was an accessory use of an industrial or office use on the property.

[13] That testimony is consistent with the May 14, 2014 letter that Tartaglia sent to the town's building official, which was admitted into evidence. In that letter, Tartaglia requested "that no civil official of the [town] enter upon the property . . . without warrant and due process of law."

[14] As an example, Tartaglia testified that a "trucking operation or the freight operation involves something active. It requires an intermodal facility . . . . The global partners oil terminal facility on the Connecticut River in Wethersfield could be considered a trucking and freight operation because it has massive oil tanks. Trucks are sent in to pick up oil and take it away."

[15] Section 2.2 of the regulations is titled "Word Usage." Section 2.2.B provides: "For the purpose of interpretation and enforcement of these regulations, certain words not defined in this Section shall be defined by the [commission] after consulting:

"1. The Building Code.

"2. The Illustrated Book of Development Definitions.

"3. The Connecticut General Statutes.

"4. Black's Law Dictionary.

"5. Webster's Third New International Dictionary."

[16] Section 2.3.C defines the term "commercial vehicle" as "[a]ny vehicle or equipment regularly used to carry, deliver, handle or move goods in the conduct of a business, commerce, profession, or trade" that features at least two of the nine "characteristics" specified therein. That regulation then states in relevant part: "The following types of vehicles when regularly used to carry, deliver, handle or move goods in the conduct of a business, commerce, profession, or trade shall all be considered commercial vehicles . . . cargo vans, box trucks, flat bed or stake bed trucks, buses, semi trailers, tractor trailers . . . ."

[17] We reiterate that the regulations define "accessory use" as "[a] use subordinate and customarily incident to a principal use on the same lot in compliance with the same standards and procedures that govern the princi-

pal use of a property." Wethersfield Zoning Regs., art. II, § 2.3.A.

[18] In its June 23, 2016 answer, the defendant left the plaintiffs to their burden of proof with respect to that allegation.

[19] In its June 23, 2016 answer, the defendant denied the truth of those allegations.

[20] "It is well established that a zoning regulation . . . is a municipal legislative enactment." *Brenmor Properties, LLC* v. *Planning & Zoning Commission*, 162 Conn. App. 678, 699, 136 A.3d 24 (2016), aff'd, 326 Conn. 55, 161 A.3d 545 (2017).

[21] In so doing, our Supreme Court emphasized that "if the plaintiff had appealed to the board, and if the board had decided in the plaintiff's favor, she would not have needed to file the present [declaratory judgment] action. If the board had decided the case against the plaintiff, the Superior Court would be presented with the reasons for the board's decision and would have been able to make an informed decision as to whether the board had acted arbitrarily." *Piquet* v. *Chester*, supra, 306 Conn. 187.

[22] See footnote 15 of this opinion.

[23] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a [municipal zoning board of appeals] . . . may take an appeal to the superior court for the judicial district in which the municipality is located . . . ."

[24] A specially permitted use is one which requires property owners to secure special permit approval from the applicable land use agency, which ordinarily is the municipal planning and zoning commission. See *Barberino Realty & Development Corp.* v. *Planning & Zoning Commission*, 222 Conn. 607, 620, 610 A.2d 1205 (1992). "[T]he special permit process is, in fact, discretionary. . . . [G]eneral considerations such as public health, safety and welfare, which are enumerated in zoning regulations, may be the basis for the denial of a special permit." (Citation omitted.) *Irwin* v. *Planning & Zoning Commission*, 244 Conn. 619, 626–27, 711 A.2d 675 (1998).

[25] Titled "Prohibited If Not Clearly Permitted," § 2.1.A of the regulations provides: "1. Use of land, buildings or structures not clearly permitted in the various zoning districts is prohibited. 2. Activities not clearly permitted in the [r]egulations are prohibited."

[26] It is undisputed that the regulations at issue were in effect when the defendant acquired the property from a predecessor company, 61 Arrow Road, LLC, in September, 2014. Tartaglia served as the manager of both 61 Arrow Road, LLC. and the defendant.

[27] Although § 6.2 also concerns parking, that section pertains to the adequacy of parking spaces on a given property and the specifications thereof. That section does not authorize the parking or storage of commercial vehicles as a principal or accessory use.

[28] Section 3.5.5.B of the regulations provides in relevant part:

"1. The Board may require that commercial vehicles approved under this subsection shall be parked in a location that will be screened from view along the nearest property line or from a public right-of-way with appropriate vegetative buffering, fencing, earthen berms or a combination thereof.

"2. In considering an application for a commercial vehicle, the Board shall consider such factors as:

"a. the proposed method of screening,

"b. proximity to adjacent lots and buildings,

"c. the size and characteristics of the vehicle,

"d. the intended use,

"e. the hours of operation of the vehicle,

"f. other vehicles on the property and,

"g. the character of the neighborhood.

"3. The Board may attach reasonable restrictions on any [special permit] approved under these regulations in order to maintain neighborhood residential character.

"4. All applications for a [special permit] shall be accompanied by:

"a. a detailed description of the vehicle on a form provided by the Town that shall include: gross vehicle weight, height, total length, box length, wheelbase, model and make.

"b. a color photograph of the vehicle and,

"c. a site plan identifying the proposed parking area for the vehicle, proximity to adjacent buildings and any proposed screening."

[29] In its April 20, 2017 memorandum of decision, the court stated: "While some tenants did indeed have trucks as part of their operation—a legitimate accessory use—this was not the focus of this [injunctive] action." The court further noted that "[t]o the extent there is a question on an accessory use,

this court will retain jurisdiction."

[30] If the defendant is correct that § 5.2.H.5 is constitutionally infirm and, hence, inapplicable to its property, then no parking and storage of commercial vehicles can transpire on the property as a principal use. We reiterate that the regulations here are permissive in nature; as a result, only principal uses specifically permitted under the regulations are allowed. See Wethersfield Zoning Regs., art. II, § 2.1.A. As our Supreme Court has noted, "given the town's permissive zoning scheme, where all uses not specifically permitted are deemed prohibited, in order for the [property owner] to be entitled to [engage in the use of the property in question] at all, there must be some language in the regulations *permitting* that activity." (Emphasis in original.) *Graff* v. *Zoning Board of Appeals*, supra, 277 Conn. 656. The defendant has not identified any other provision of the regulations that specifically permits the parking and storage of commercial vehicles on its property as a principal use.

[31] Section 2.2.B of the regulations specifies Webster's Third New International Dictionary as a preferred dictionary "[f]or the purpose of interpretation" of words that are not defined in the regulations.

[32] For that reason, we find utterly unconvincing the defendant's semantical argument that the phrase "trucking or freight operations," as used in § 5.2.H.5, applies only to "active" trucking operations. It is undisputed that trucking businesses, such as Igor Transportation, LLC, and M&A Express Transport, LLC, actively stored their commercial vehicles on the defendant's property. While it is true that "doubtful language [in a zoning regulation] will be construed against rather than in favor of a [restriction]" (internal quotation marks omitted) *Kobyluck Bros.*, *LLC* v. *Planning & Zoning Commission*, 167 Conn. App. 383, 392, 142 A.3d 1236, cert. denied, 323 Conn. 935, 151 A.3d 383 (2016); the natural and usual meaning of the language at issue in this case is not in doubt.

[33] That requirement mirrors the mandate of Wethersfield Zoning Regs., art. VIII, § 8.9.B, which requires consideration of whether a specially permitted use proposed by a property owner "will provide adequate landscaping and screening for the protection of abutting uses." It is undisputed that the abutting property north of the lot where commercial vehicles are stored is used as a residential condominium complex.

[34] See footnote 28 of this opinion.

[35] Our Supreme Court has explained that "although [the] court is not bound by a zoning board's interpretation of its regulations, a board's reasonable, time-tested interpretation is given great weight." *Jalowiec Realty Associates*, *L.P.* v. *Planning & Zoning Commission*, 278 Conn. 408, 414, 898 A.2d 157 (2006); see also *Doyen* v. *Zoning Board of Appeals*, 67 Conn. App. 597, 604, 789 A.2d 478 (although not binding, "[i]f a board's time-tested interpretation of a regulation is reasonable . . . that interpretation should be accorded great weight by the courts"), cert. denied, 260 Conn. 901, 793 A.2d 1088 (2002). There is no indication in the record or assertion by the defendant that § 5.2.H.5 is the subject of a time-tested interpretation.

[36] We further reject the premise underlying the defendant's argument, as there is no indication in the court's memorandum of decision that it found that the plaintiffs failed to prove that the storage of commercial vehicles on the property constituted a public nuisance, as alleged in the operative complaint. If anything, that memorandum of decision reasonably can be construed as containing an implicit finding of a public nuisance, as the court (1) found that LaFountain had "received complaints about the parking of trucks" on the property; (2) found that the town "was concerned with trucking operations on the property, and the evidence indicates that the defendant willingly allowed such a use"; and (3) found that "there is no evidence that weighs in the defendant's favor." Furthermore, no articulation of the court's decision was sought by the defendant with respect to that issue. See Practice Book § 66-5; see also *Brennan* v. *Brennan Associates*, 316 Conn. 677, 705, 113 A.3d 957 (2015) (responsibility of appellant to ask trial judge to rule on overlooked matter).

[37] Because an award of costs and attorney's fees pursuant to § 8-12 requires proof of a wilful zoning violation, we reject the defendant's ancillary contention that the plaintiffs failed to properly allege in their complaint that they were entitled to such an award. Inherent in the plaintiff's request for an award of costs and attorney's fees pursuant to § 8-12 was the assertion that the defendant had wilfully violated the regulations in question, as detailed more specifically in paragraph 8 of the complaint.

[38] The defendant also alleges that the plaintiffs' failure to explicitly plead an allegation of wilfulness "rendered the [contempt] proceeding defective."

The defendant has provided neither legal authority nor analysis to substantiate that contention. We therefore decline to review that inadequately briefed assertion. See *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) ("[a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly" [internal quotation marks omitted]).

[39] "Civil contempt may be either direct or indirect. Indirect contempt concerns conduct occurring outside of the court's presence." *Alldred* v. *Alldred*, 132 Conn. App. 430, 434 n.4, 31 A.3d 1185 (2011), appeal dismissed, 303 Conn. 926, 35 A.3d 1075 (2012).

[40] Practice Book § 10-30 provides: "(a) A motion to dismiss shall be used to assert: (1) lack of jurisdiction over the subject matter; (2) lack of jurisdiction over the person; (3) insufficiency of process; and (4) insufficiency of service of process.

"(b) Any defendant, wishing to contest the court's jurisdiction, shall do so by filing a motion to dismiss within thirty days of the filing of an appearance.

"(c) This motion shall always be filed with a supporting memorandum of law and, where appropriate, with supporting affidavits as to facts not apparent on the record."

[41] For example, LaFountain testified that he observed "approximately fifteen to twenty box trucks" during his April 24, 2017 inspection of the property.

[42] At the contempt hearing, the court was presented with evidence that those three tenants did, in fact, file special permit applications with the commission. The record does not contain copies of the applications submitted to the commission, nor does it contain any evidence of the public hearings, deliberations, or formal decisions of the commission. Rather, the court heard testimony that the special permit applications were denied by the commission because they did not comply with certain requirements in the regulations. In its memorandum of decision, the court emphasized that "[t]he record does not indicate that the three applications would satisfy the zoning regulations," and the defendant has not argued otherwise in this appeal.

[43] For example, the lease agreement with Stefak that was admitted into evidence states in relevant part: "Notwithstanding anything in this lease to the contrary—any default under this lease will result in a lock out from the space and the building. Parking is a privilege, not a right and *may be terminated at any time* by Landlord in Landlord's sole discretion. Landlord reserves the right to tow *immediately* upon tenant default." (Emphasis altered.)

[44] At that point in the contempt hearing, the court urged Tartaglia to "be mindful of what you're saying." Tartaglia replied, "Your Honor, I'm very mindful of what I'm saying here."

[45] Without offering any citation to authority or legal analysis, the defendant baldly asserts on the thirty-fifth and final page of its principal appellate brief that the court failed to find that the defendant's violation of the court order was wilful. Apart from the patent inadequacy of that briefing, we are mindful that "our appellate courts do not presume error on the part of the trial court. . . . Rather, we presume that the trial court, in rendering its judgment . . . undertook the proper analysis of the law and the facts." (Citations omitted; internal quotation marks omitted.) *Brett Stone Painting & Maintenance, LLC* v. *New England Bank*, 143 Conn. App. 671, 681, 72 A.3d 1121 (2013); see also *State* v. *Milner*, 325 Conn. 1, 13, 155 A.3d 730 (2017) ("the trial court's ruling is entitled to the reasonable presumption that it is correct unless the party challenging the ruling has satisfied its burden demonstrating the contrary" [internal quotation marks omitted]). Absent an indication to the contrary, we therefore "must assume [that] the court acted properly." *Water Street Associates Ltd. Partnership* v. *Innopak Plastics Corp.*, 230 Conn. 764, 774, 646 A.2d 790 (1994). Read and reasonably interpreted as a whole, we can only construe the court's memorandum of decision as one containing the requisite finding of wilfulness on the part of the defendant. Although not expressly stated, such a finding plainly emanates from the court's decision. See *RBC Nice Bearings, Inc.* v. *SKF USA, Inc.*, 318 Conn. 737, 753, 123 A.3d 417 (2015) (appellate courts construe ambiguous memorandum of decision to support judgment).